[Civ. No. 26727. Second Dist., Div. One. May 15, 1963.]

CARL H. CLAUSSENEUS, Plaintiff and Appellant, v. WILLIAM A. ANDERSON et al., Defendants and Respondents.

Jerrell Babb for Plaintiff and Appellant.

Joseph M. Ray for Defendants and Respondents.

FOURT, J.—Plaintiff appeals from the order "granting Defendants' Motions for an Order to Quash and Recall a Writ of Execution and for [*sic*] an Order Cancelling Judgment. . . ."

A brief résumé of the facts is as follows:

On March 2, 1953, defendants executed a declaration of homestead (joint declaration of husband and wife).[1] It was recorded on March 3, 1953.

On October 1, 1951, defendants and Hugo and Anna Jaeger acquired certain mining property in the Tehachapi area from plaintiff and agreed to pay therefor $125,000. Defendants and the Jaegers defaulted in the monthly payment installments and plaintiff obtained judgment in an action against defendants and the Jaegers on September 14, 1954. It is this judgment which plaintiff seeks to enforce. An abstract of the judgment was recorded on or about October 6, 1954.

Defendants filed separate but similar petitions in bankruptcy on May 5, 1959, in the Southern District of Cali-

---

[1]The declaration of homestead provides in pertinent part as follows:

". . . [T]he undersigned, to wit, William August Anderson and Dorthea Marie Anderson do severally certify and declare as follows:

'(1) They are husband and wife.

'(2) William August Anderson is the head of a family, consisting of himself and wife.

"(3) They are now residing on the land and premises located in the City of Los Angeles, County of Los Angeles, State of California, and more particularly described as follows:

"Tract No. 1200 Lot 14 Block 45
District of Van Nuys California
Also Known As 14557 Haynes Street
Van Nuys California.

"(4) They claim the land and premises hereinabove described together with the dwelling house thereon, and its appurtenances as a Homestead.

"(5) They estimate the actual cash value of the land and premises hereinabove described to be Seven Thousand ($7,000) Dollars.

"(6) No former declaration of homestead has been made by them, or by either of them. . . .

"(7) The character of said property so sought to be homesteaded is as follows:

"One six room frame house, containing approximately 1400 square feet located on a lot 50 feet by 150 feet."

fornia, Central Division, wherein plaintiff's judgment was duly scheduled. Defendants received their respective discharges as bankrupts in said proceedings on July 30, 1959.

The homesteaded property was claimed as exempt by defendants. The trustee in bankruptcy reported the real property as exempt under Civil Code section 1240 on July 30, 1959. An order approving the trustee's report of exemptions was entered and filed on August 28, 1959, and the exempt property was set apart to the bankrupts (defendants).

On March 30, 1962, defendants filed (1) a notice of motion for order cancelling judgment by bankrupt and declaration in support thereof (Code Civ. Proc., § 675b) and (2) a notice of motion for order to quash and recall execution, declaration in support thereof and points and authorities.

On April 11, 1962, plaintiff filed his points and authorities in opposition to motion to quash and recall execution and declaration in support thereof.

On April 23, 1962, defendant William A. Anderson filed a counterdeclaration.

On May 3, 1962, a stipulation as to facts was filed.

A minute order dated May 25, 1962, indicates that ''(1) Motions of defendants for order to quash and recall Writ of Execution'' and ''(2) Motion of defendants William A. Anderson and Dorothea M. Anderson for order cancelling and discharging judgment of record'' were granted. The within appeal followed.

What is stated in 25 California Jurisprudence 2d, Homesteads, section 57, page 368, is helpful. It there provides as follows in pertinent part:

''An order of a bankruptcy court adjudging that a bankrupt has a valid homestead on certain property does not bind creditors who by state law have a judgment lien on the property at the time of the adjudication of bankruptcy. Such creditors are not required to go into the bankruptcy court to contest the trustee's report listing the property as a homestead in order to subject it to execution. On the other hand, a judgment creditor who is without a lien because the debtor's property is subject to a valid homestead is bound by the bankruptcy court's adjudication that the property is a homestead, not by virtue of the adjudication in bankruptcy itself, but by reason of his character as a creditor with a mere contract claim reduced to judgment.''

A pivotal question for determination is whether defendants have a valid homestead because a judgment lien can-

not attach to a valid homestead. (*Thomas* v. *Speck*, 47 Cal. App.2d 512, 519 [118 P.2d 365]; Code Civ. Proc., § 674; 29 Cal.Jur.2d, Judgments, § 286, pp. 265-266.)

Plaintiff asserts a number of arguments in support of the proposition that the declaration of homestead was invalid. *First*, that the declaration of homestead was not properly executed. The gist of this contention is that the purported signatures of defendant William A. Anderson on the declaration of homestead were not genuine. The answer to this contention is found in the direct examination of defendant William A. Anderson. The reporter's transcript discloses the following in pertinent part:

"Q. Mr. Anderson, calling your attention to the execution of a Homestead that purportedly contains your signature at two places, the acknowledgment and the verification, or oath, I ask that you examine that paper and then answer certain questions that I will ask you. Will you please examine your signature? May I come forward, your Honor?

"The Court: Certainly.

"By Mr. Ray:

"Q. I direct your attention to what purports to be your signature on one face of the Homestead and again on the other, the back face of the Homestead, and I will ask if those are both your signatures?

"A. They are.

"Q. And you signed both of those?

"A. I did."

In connection with plaintiff's contention that the purported signatures of defendant William A. Anderson on the declaration of homestead were not genuine, plaintiff further asserts that the trial court erred in giving no recognition to plaintiff's opinion as to the lack of genuineness of the signatures.

It is stated in Witkin, California Evidence, section 181, page 201, as follows:

"(2) *Handwriting.* The opinion of an ordinary witness as to a person's handwriting, of which he has knowledge, is permissible. (Code Civ. Proc., §§ 1870, subd. 9, 1943; see *People* v. *Porter* (1950) 99 Cal.App.2d 506, 509 [222 P.2d 151]; *Gibson* v. *Mailhebuau* (1929) 96 Cal.App. 455, 459 [274 P. 566]; 1 Schweitzer 436; *infra*, § 345.)" (Italics shown.)

Plaintiff by his own testimony on cross-examination seems to have negated any reasonable inference that he had

knowledge of defendant's signature.[2] The trial court did not err.

█ *Second,* that the use of the pronoun "they" instead of the pronoun "we" in the declaration of homestead renders the declaration invalid (see footnote 1).

Civil Code, sections 1262 to 1265a prescribe no particular form for a declaration of homestead other that its contents. A reading of the declaration leaves no doubt that the defendants were referring to themselves when they used the pronoun "they." Plaintiff's assertion that the grammatical result fails to identify the defendants as the claimants making the declaration is both strained and hypertechnical.

█ What is stated in 12 California Jurisprudence 2d, Contracts, section 121, page 331, is apposite:

". . . [a] court will not divest a person of his property by a rigid adherence to the rules of grammatical construction or by a strict interpretation of the language of an instrument, when the sense in which the words are used is apparent from other portions of the instrument, viewed in the light of attending facts."

█ *Third,* that the description of the premises in the declaration of homestead is not sufficient.

The property is described in the declaration of homestead (see footnote 1) as "Tract No. 1200 Lot 14 Block 45 District of Van Nuys California Also Known As 14557 Haynes Street Van Nuys California. . . (7) The character of said property so sought to be homesteaded is as follows: One six room frame house, containing approximately 1400 square feet located on a lot 50 feet by 150 feet."

The apparent thrust of plaintiff's contention is that there are two dwelling houses on the same lot. Plaintiff asserts in his brief that "the problem of determining the dwelling

---

[2]The reporter's transcript discloses the following in pertinent part:

"Q. When is the last time you saw Mr. Anderson sign any paper in your presence?

"A. I couldn't give the exact dates.

"Q. Well, is it more than a year?

"A. *Closer to ten years.*

. . . .

"Q. You did not examine his signature at any time that he has signed his name in the last ten years?

"A. Well——

"Q. Outside of the—outside of the contract we stated—outside of the contract that is before the Court and in evidence here, and outside of his Homestead that you examined, have you seen any papers executed by Mr. Anderson?

"A. I don't believe so." (Italics added.)

which is allegedly claimed as a homestead becomes impossible...."

This contention is without merit. First, since only one street address is given, it seems obvious that this is the property intended (see *Oktanski* v. *Burn,* 138 Cal.App.2d 419, 422 [291 P.2d 954]); second, the dwelling—14557 Haynes Street —is the only dwelling on the lot which contains approximately 1400 square feet (the other dwelling—6562 Vesper Avenue—is a house not in excess of 800 square feet); and third, the parties executed a stipulation as to facts which provides in pertinent part as follows:

"1. That the Defendants selected for their homestead, on March 2nd, 1953, the improved real estate situated at 14557 Haynes Street, Van Nuys, California, on a lot 50 feet wide and 150 feet deep, fronting on Haynes Street and running back along Vesper Avenue 150 feet. It is a corner lot. That the house above mentioned, being the one that was selected as a homestead, has approximately 1400 square feet and consists of six rooms.

"2. That on the rear of the same lot above mentioned, there is a house not in excess of 800 square feet. That house fronts on Vesper Avenue and the address of said house is 6562 Vesper Avenue...."

What was stated in *Oktanski* v. *Burn, supra,* 138 Cal. App.2d 419, 421-422, is pertinent:

"[2] It is true that a valid homestead declaration should contain a reasonably correct description, but it is not true that absolute perfection is required. In the instant case the street number is correctly given and no one could be misled by believing that any property was intended other than ... Street ...

".... [3] The only purpose of a description is to reasonably identify the property intended, and the description in a homestead declaration need not be more particular than in a conveyance. [Citation.] 'To uphold homesteads, which are favored by the law,' says the reviewing court in *Donnelly* v. *Tregaskis,* 154 Cal. 261, 263 [97 P. 421], 'great liberality in this respect (description) will be allowed.'

"Appellants' contention is that the declaration apparently covered two different parcels, and that it cannot be determined which was intended. As hereinbefore indicated, the argument is untenable. Since only one street address is given, it seems obvious that this is the property intended. [4] Even where a declaration of homestead covers premises

in addition to those occupied as a home, such fact does not invalidate the declaration as to the premises properly included therein. (*King* v. *Gotz,* 70 Cal. 236 [11 P. 656].)''

We conclude that defendants have a valid homestead and that plaintiff did not obtain a judgment lien by the recordation of the abstract of his judgment. This being true, no useful purpose would be served by discussing plaintiff's contention that discharge in bankruptcy does not preclude enforcement of a prior lien.

Plaintiff's last contention is that the debt on which the judgment is based is not dischargeable in bankruptcy because of fraud.

The original action maintained by plaintiff against defendants which ultimately resulted in the judgment in favor of plaintiff *was not* an action for fraud. It was an action to recover accrued monthly installment payments—defendants having defaulted in making monthly installment payments under a conditional sales contract. Plaintiff attempts to pierce the judgment to show the nature of the obligation (see *United States Credit Bureau, Inc.* v. *Manning,* 147 Cal.App. 2d 558 [305 P.2d 970]).

Plaintiff asserts in his declaration as follows in pertinent part:

''That I am the plaintiff and judgment creditor herein and as such plaintiff I recovered judgment against the defendants herein named on or about September 14, 1954, in the within action, for the sum of $22,020.02, which judgment was thereafter abstracted and said Abstract was recorded. . . .

''That no part of said judgment has been paid and the same is wholly due and payable, together with interest thereon from the date of entry, as aforesaid.

''. . . . . . . . . . . . .

''The within action upon which the judgment was obtained was an action which orginated from a contract for the purchase and sale of certain mining property I owned in Kern County, State of California, and the contract was dated October 1, 1951. That the said contract called for the minimum payment to me of $600.00 a month after the down payment therein provided for, based upon the taking of ore from the property, and a total purchase price of $125,000.00.

''That after paying the down payment, the defendants went upon the property. . . . No money after said down payment was ever paid me, except the sum of approximately $70.00, and in preparing to bring the present action, my in-

vestigation determined that defendants had never been entitled to believe that they could perform said contract and pay me the sum of $125,000.00 purchase price, they neither having nor having had resources which would have been any basis for making and entering into a contract to pay said purchase price, *despite representations made to me by said defendants* and particularly William A. Anderson and Dorothea M. Anderson *that they had resources from which to pay said purchase price at the time of executing said contract.*"

Defendant William A. Anderson's counter declaration filed April 23, 1962, provides in pertinent part as follows:

"6. I made no representations and made no statements, either written or oral, of our financial condition or ability to pay the minimum 600.00 monthly payments, either with or without the expectation of obtaining ore in commercial quantities from the mine, and neither did we represent our ability to pay $125,000.00 for the mine, or that we had resources from which to pay $125,000.00, and no statements written or oral to that effect, or at all, were made or given to the plaintiff. . . . The facts of our economic existence plainly make such representations impossible and absurd. At the time, I was employed by Lockheed as a metalman working for weekly wages. The only asset we had was our home, and we mortgaged that to obtain the $5,000.00 we put down to get into the deal. The plaintiff knew this. . . ."

 The simple answer to plaintiff's contention is that it is for the trial court to determine all conflict in testimony or affidavits. (*Luz* v. *Lopes,* 55 Cal.2d 54, 62 [10 Cal. Rptr. 161, 358 P.2d 289].)

For the reasons stated, the orders are and each of them is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 5, 1963, and appellant's petition for a hearing by the Supreme Court was denied July 10, 1963.