## In re HORTON.

District Court, W. D. Louisiana, Monroe Division. October 3, 1928.

No. 3234.

796

A. Leonard Allen and Moss & Moss, all of Winnfield, La., for bankrupt.

Thos. W. Leigh, of Monroe, La., for opponents and trustee.

DAWKINS, District Judge. This is a petition to review the ruling of the referee sustaining the claim of the wife to a privilege or legal mortgage upon the funds arising from the sale of both movable and immovable property of her bankrupt husband.

Although the existence of the indebtedness was contested before the referee, it appears to be admitted in the brief of the opposing creditors and trustee that the amount claimed was actually due, and the only question to be considered here is as to whether the lien or privilege can be asserted against general creditors.

The money was received by the wife during the marriage, from the estate of her parents, and used by the husband for the benefit of the community. She never recorded any evidence thereof prior to the bankruptcy.

### Opinion.

The wife during her marriage is capable of owning two species of separate property, i. e., dotal and paraphernal. Article 2383, La. C. C., declares:

"*Paraphernal Property.* All property which is not declared to be brought in marriage by the wife, or to be given to her in consideration of the marriage or to belong to her at the time of the marriage, is paraphernal."

The state law accords to the wife a privilege upon the movable property of her husband for the repayment of her dotal claims (R. C. C. art. 3215), but this does not extend to claims for paraphernal funds or property. Stafford v. Dunwoodie, 3 Rob. (La.) 276; Stafford v. Mead, 9 Rob. (La.) 142; Friend v. Fenner, 2 La. Ann. 789; Succession of Richardson, 14 La. Ann. 1. I think it clear, however, from the article of the Code last above quoted, that the claim in this instance is for paraphernal funds; hence the law affecting the dotal claims need not be considered.

As bearing upon the claim of a privilege, I quote also the following articles of the Revised Civil Code:

"Art. 3311. *Legal or Tacit Mortgages.* The law alone in certain cases gives to the creditor a mortgage on the property of his debtor, without it being requisite that the parties should stipulate it; this is called *legal* mortgage.

"It is called also *tacit* mortgage, because it is established by the law without the aid of any agreement."

"Art. 3312. *Id. Stricti Juris.* No legal mortgage shall exist, except in the cases determined by the present Code."

"Art. 3319. *Id. In Favor of Wife.* The wife has a legal mortgage on the property of her husband in the following cases:

"1. For the restitution of her dowry, and for the reinvestment of the dotal property sold by her husband, and which she brought in marriage, reckoning from the celebration of the marriage.

"2. * * *

"3. For the restitution or reimbursement of her paraphernal property."

"Art. 3320. *Present and Future Property Affected by.* The creditor who has a legal mortgage, except in the case where certain specific property is subjected to it, may exercise his right on all the immovables belonging to his debtor, and on such as may subsequently belong to him."

"Art. 3329. *Recordation Fixes Rank of Mortgage.* Among creditors, the mortgage, whether conventional, legal or judicial, has force only from the time of recording it in the manner hereafter directed."

"Art. 3342. *Registry Essential to Affect Third Persons.* Conventional mortgage is acquired only by consent of the parties, and judicial and legal mortgages only by the effect of a judgment or by operation of law.

"But these mortgages are only allowed to prejudice third persons when they have been publicly inscribed on records kept for that purpose and in the manner hereafter directed."

"Art. 3343. *Third Persons. Who Are.* By the words *third persons* used in the foregoing article, are to be understood all persons who are not parties to the act or to the judgment on which the mortgage is founded."

"Art. 3345. *Recordation.* All mortgages, whether conventional, legal or judicial, are required to be recorded in the manner hereafter provided."

"Art. 3347. *Id.* No mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated."

"Art. 3349. *Id. Married Woman's Legal Mortgage.* To preserve the legal mortgage or privilege existing in favor of a married woman, it shall be the duty of such married woman, or any person for her, to cause to be recorded in the mortgage book of the parish where the property is situated the evidence of her mortgage or privilege. If such evidence be in writing, it shall be recorded in the manner required by law; if it be not in writing, then a written statement, under oath, made by the married woman, her husband, or any other person having knowledge of the facts, setting forth the amount due to the wife, and detailing all the facts and circumstances on which her claim is based, shall be recorded."

I also quote section 19 of article 19 of the Louisiana Constitution (1921):

"No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law, except privileges for expenses of last illness, privileges arising upon the death of the owner of the property affected, and privileges for taxes, State, parish and municipal; provided such tax liens, mortgages and privileges shall lapse in three years from the 31st day of December in the year in which the taxes are levied, and whether now or hereafter recorded.

"Privileges on movable property shall exist without registration of same except in such cases as may be prescribed by law."

A failure to record the evidence of the wife's claim arising from the use by her husband of her paraphernal funds or property the Supreme Court of Louisiana has held to be fatal to the claim of a mortgage against third persons. Scheen v. Chaffe et al., 36 La. Ann. 217; Succession of John M. Nelson, 24 La. Ann. 25.

As originally enacted, the Bankruptcy Statute of July 1, 1898, § 47a(2), 11 USCA § 75(a)(2), required the trustee inter alia to "(2) collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compatible with the best interest of the parties in interest, * * *". and in section 70a, 11 USCA § 110(a), it declared:

"Sec. 70. *Title to Property.*. a. The Trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt. * * *"

In 1906 the Supreme Court of the United States, in the case of York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782, had occasion to construe the effect of this law in so far as the rights of a receiver or trustee in bankruptcy were concerned, as distinguished from those of the bankrupt and creditors, and, in doing so, through Mr. Justice Peckham, said:

"The trustee in bankruptcy is vested with no better right or title to the property than the bankrupt had when the trustee's title accrued; and where, as in the state of Ohio, a conditional sale contract is good as between the parties themselves although not filed, the vendor of machinery, sold and delivered under such a contract and payment for which had not been made, may remove the same as against all creditors of the bankrupt who have not fastened upon it by some specific lien."

Thereafter, and as a result of this decision, Congress passed the Amendment of June 25, 1910 (36 Stat. 840, § 8), adding to the language of section 47a(2), above quoted, the following:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all prop-

erty not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." 11 USCA § 75(a)(2).

I say that this amendment was enacted because of this ruling, for, as pointed out by Judge Kenyon in an opinion by the Court of Appeals for the Eighth Circuit in the case of In re Smith-Flynn Commission Co., 292 F. 473, the report of the Judiciary Committee of the Senate upon the measure refers specifically to York Manufacturing Co. v. Cassell, supra.

In order to understand the purpose of Congress and the defects which it sought to overcome, I think it well to consider further the situation with which the Supreme Court dealt in the York Manufacturing Co. Case. There the Mt. Vernon Ice, Coal & Mining Company, before bankruptcy, had entered into a contract with the York Manufacturing Company for the purchase of machinery, and the title thereto had been retained in the vendor, but the agreement had not been recorded as required by the Ohio statute. After bankruptcy, the vendor sought to have the machinery returned to it, but both the District Court and the Court of Appeals (135 F. 52) held that, as against general creditors, the lien or right to remove the property had been lost by the failure to record. The Ohio law declared that the reservation of title should "be void as to all subsequent purchasers and mortgagees in good faith, *and creditors*" unless reduced to writing and recorded as therein provided. In commenting upon the effect of bankruptcy, the Supreme Court said:

"We come then to the question whether the adjudication in bankruptcy was equivalent to a judgment, attachment or other specific lien upon the machinery. The Circuit Court of Appeals has held herein that the seizure by the court of bankruptcy operated as an attachment and an injunction for the benefit of all persons having interests in the bankrupt's estate.

"We are of opinion that it did not operate as a lien upon the machinery as against the York Manufacturing Company, the vendor thereof. Under the provisions of the bankrupt act the trustee in bankruptcy is vested with no better right or title to the bankrupt's property than belonged to the bankrupt at the time when the trustee's title accrued. At that time the right, as between the bankrupt and the York Manufacturing Company, was in the latter company to take the machinery on account of default in the payment therefor. The trustee under such circumstances

stands simply in the shoes of the bankrupt and as between them he has no greater right than the bankrupt. * * *

"In this case, under the authorities already cited, the York Manufacturing Company had the right, as between itself and the trustee in bankruptcy, to take the property under the unfiled contract with the bankrupt, and the adjudication in bankruptcy did not operate as a lien upon this machinery in favor of the trustee as against the York Manufacturing Company."

The court did not consider, because the issue apparently was not before it, what the effect would have been had there been creditors with liens against the estate special or general, but there were undoubtedly creditors, else there would have been no bankruptcy, and it will be noted that the state statute in that case makes the unrecorded conditional sale as above pointed out void as to "creditors." Nevertheless, the court found that their position as represented through the trustee was no better than that of the bankrupt; and hence, as to them, the unrecorded contract was binding. Of course, broadly speaking, and for some purposes, a trustee has a dual capacity; as to the title to the property and assets of the estate, including rights and remedies for protecting the same as against persons outside of the bankruptcy, he steps into the shoes of the bankrupt, but he is also the representative of the general creditors, and may even, when authorized by them, oppose the discharge of the bankrupt. So that, when Congress came to correct what it considered a defect in the law exposed by the York Manufacturing Company Case, it was evidently attempting to protect the interest of the creditors as against such a situation as had arisen in that case, and therefore created in favor of the trustee, independent of any rights of creditors under existing state laws (but of course subject to any valid liens arising from that source), a somewhat anomalous lien upon the same property as to which it had vested him with title. It will hardly be denied that, having the power to pass a general and exhaustive law upon the subject of bankruptcy, it could, as an incident thereto, create such rights and remedies as it might see fit within the limits of the Constitution. Therefore, possessing this right and having exercised it in the manner which was avowedly done to correct the weakness of the original statute in the interest of general creditors, I am constrained to hold that it intended to place trustees in the superior position of a creditor "holding a lien by legal or equitable proceedings" upon the property, and "with

the remedies and powers of a judgment creditor holding an execution duly returned unsatisfied" and with no other purpose than to cut off secret and undisclosed claims against the property such as were recognized in the cited case. To now hold that not only did the amendment not have this effect, but that the situation remained as under the old law requiring each individual creditor to prove his lack of knowledge of the unrecorded mortgage of the wife, I think would practically nullify this well-considered and deliberate action of the legislative branch of the government. One of the main purposes of the bankruptcy law is to attain a uniform and equitable distribution of bankrupt estates, which would be largely defeated by discriminating between those creditors who had and who had not heard of unrecorded claims.

My conclusion is that the ruling of the referee was erroneous, and that the wife should be recognized as an ordinary creditor to share ratably with others in the funds of the estate.

Decree may be presented.