*176
 
 Opinion
 

 HASTINGS, J.
 

 In October 1969, an action in equity was instituted by a judgment creditor, Howard and Betty Joy Engelman (Engelman), to subject certain residential property to their judgment as being the property of the judgment debtor Hank Gordon (Hank), although title thereto stood in the name of Hank’s wife, Carolyn S. Gordon (Carolyn). Thereafter, in March 1972, pursuant to leave of court, Harry and Frances Stumer (Stumer) filed a complaint in intervention whereby they adopted Engelman’s first amended complaint and the relief sought therein, in that both Engelman and themselves were each judgment creditors of Hank. A judgment was rendered in favor of the creditors (Engelman and Stumer), and both Hank and Carolyn appealed. Stumer cross-appealed. This court reversed the judgment for a new trial on limited issues.
 
 [1]
 
 On retrial, judgment was granted in favor of Engelman as against Hank and Carolyn and in favor of Hank and Carolyn as against Sturner. Hank and Carolyn appealed, and Stumer cross-appealed.
 
 [2]
 

 The pertinent facts on this appeal are as follows: In 1962 Sturner filed an action against Hank and obtained a judgment in excess of $18,000. This judgment, except for the sum of $4,000 received by Stumer in 1973, is unsatisfied.
 

 In 1962, after construction of the residence on the subject property was completed, Hank and Carolyn occupied the property as their family residence until their separation in 1969. From November 2, 1961, through October 6, 1962, fee title to this property was held in the name of Gordon Building Corporation (Gordon), of which Hank was the president and sole shareholder. However, a financial statement for Gordon as of May 31, 1962, listed all of the corporation’s real property and did not include the subject property.
 

 
 *177
 
 In August 1962, Gordon gave a first trust deed on the subject property to Gibraltar Savings and Loan (Gibraltar) to secure a $73,000 note. The guaranty agreement, though, referred to Hank as the borrower and was signed by Hank and Carolyn. That same month Gordon also executed trust deeds to Leo and Sally Siskin, Carolyn’s parents, for $100,000 and to Tower Construction Corporation (Tower) for $50,000. There was evidence that the $100,000 trust deed to Carolyn’s father was without consideration and was placed against the home to “scare off’ creditors. The Tower trust deed also was a sham for the same reason.
 

 On October 1, 1962, Gordon deeded the property to Carolyn as her sole and separate property. This deed was recorded October 5, 1962. On October 23, 1962, Carolyn filed a homestead on the property. Carolyn testified that, before this property was conveyed to her, Hank had told her that he was “having some financial problems” and did not feel that “we could afford to continue to live in the house.” Carolyn replied that she liked the house and would prefer to continue to live there and use her separate income to make the payments. Hank agreed; however, Carolyn’s first check to Gibraltar was not dated until November 15, 1963.
 

 In December 1962 Carolyn executed a grant deed in favor of Doheny Corporation, of which Hank was the president, director, and sole shareholder. In January 1963 Doheny Corporation, by Hank as president, redeeded the property to Carolyn as her sole and separate property and Carolyn refiled a declaration of homestead.
 

 On November 9, 1972, Hank was discharged as a bankrupt. Prior to the discharge, Stumer filed his objections thereto, and they were denied.
 

 On December 18, 1974 (before the partial retrial), Hank’s motion pursuant to Code of Civil Procedure section 675b “. . . for [an] order to cancel and discharge records of [Stumer’s] Judgment entered” was granted. However, the court specifically stated that “any lien based on this judgment on real property owned by defendant which was a lien thereon prior to the time he was adjudged as bankrupt” shall not be affected by this order.
 

 In November 1974, Carolyn moved the court for an order allowing the filing of a supplemental answer to the complaint and complaint-in-intervention establishing the bankmptcy of Hank as an additional defense to the action. Her motion was subsequently granted.
 

 
 *178
 
 The trial court, after the limited retrial, found inter alia that the subject property was Hank and Carolyn’s residence until their separation in 1969. That it was community property until July 31, 1971, the date of the execution of the marital separation agreement, at which time it became Carolyn’s separate property. That the various conveyances were made without consideration and were executed for the purpose of saving the property from Hank’s creditors. That the homestead recorded on October 23, 1962, by Carolyn was never abandoned by either Hank or Carolyn, but that Stumer did not levy execution on the property or apply for the appointment of appraisers as provided in Civil Code section 1245 to reach the surplus over the homestead exemption. And finally, that the community property interest in the property, by reason of the state of the record title, was not subject to levy by execution and that Sturner had no adequate remedy at law by means of which he could recover the amount of his judgment out of the community property interest.
 

 The court concluded that Sturner did not have an equitable lien on the property because it was Carolyn’s separate property at and prior to the time Stumer intervened in the lawsuit herein;
 
 [3]
 
 that Hank’s discharge in bankruptcy did not affect the lien of Stumer because the lien attached upon the service of the creditors bill in equity in this action which was prior to the discharge in bankruptcy; and that the determinations of the bankruptcy court are not res judicata as to any of the issues herein.
 

 For the reasons hereinafter stated, we have concluded that the court erred in mling that Stumer did not have an adequate remedy at law, and that the determination of the bankruptcy court was not res judicata as to any of the issues herein. This conclusion determines the appeal; therefore, other issues raised by Stumer do not require a response.
 

 It is well established in California that a judgment lien does not attach to property subject to a prior homestead declaration.
 
 (Yager
 
 v.
 
 Yager,
 
 7 Cal.2d 213, 216-217 [60 P.2d 422, 106 A.L.R. 664];
 
 Swearingen
 
 v.
 
 Byrne,
 
 67 Cal.App.3d 580, 584 [136 Cal.Rptr. 736];
 
 Putnam Sand & Gravel Co.
 
 v.
 
 Albers,
 
 14 Cal.App.3d 722, 725 [92 Cal.Rptr. 636];
 
 Clausseneus
 
 v.
 
 Anderson,
 
 216 Cal.App.2d 171, 174-175 [30 Cal.Rptr. 772].) Nor is such a judgment a lien on any surplus value therein over and above the statutory exemption, regardless of the value of the property.
 
 (Boggs
 
 v.
 
 Dunn,
 
 160
 
 *179
 
 Cal. 283, 285-286 [116 P. 743];
 
 Swearingen, supra,
 
 at p. 585;
 
 Thomas
 
 v.
 
 Speck,
 
 47 Cal.App.2d 512, 519 [118 P.2d 365].)
 

 Section 674 of the Code of Civil Procedure provides that a judgment is a lien only upon such real property that is not “exempt from execution.” The Legislature has declared that homesteads are exempt from execution (Civ. Code, § 1240) except in certain situations defined in the code (Civ. Code, § 1241).
 
 [4]
 
 It is only under these defined circumstances that a homestead can be made subject to execution and forced sale, in satisfaction of judgments obtained.
 
 (Lee
 
 v.
 
 Murphy,
 
 119 Cal. 364, 372-373 [51 P. 549].) The courts have no power to increase or diminish a homestead, nor to say when it shall or shall not be subject to forced sale. If the homestead is to be made subject to certain liens not previously protected, it must be done by the Legislature and not by the courts.
 
 (Lee
 
 v.
 
 Murphy, supra,
 
 at p. 374.)
 

 However, a levy of execution provided for by Civil Code section 1245 establishes a lien on any excess value of the property over the maximum homestead exemption. In
 
 Lean
 
 v.
 
 Givens,
 
 146 Cal. 739, 741 [81 P. 128], the court noted the different effects on homesteaded premises from a judgment and from a levy of execution and stated: “the levy of an execution on the property establishes a lien thereon to the extent of the excess over the homestead exemption which may ultimately, by proper proceedings under the Civil Code, be determined to exist . . . .” Accordingly, until the creditors fully comply with section 1245 of the Civil Code by the levy of an execution on homesteaded property, a judgment is not secured by any kind of lien thereon but amounts to only a personal liability.
 
 (Swearingen
 
 v.
 
 Byrne, supra, 67
 
 Cal.App.3d 580, 587.) The creditor is afforded no alternative procedure.
 
 (Viotti
 
 v.
 
 Giomi,
 
 230 Cal.App.2d 730, 737 [41 Cal.Rptr. 345].)
 

 In the present case the court found that the community property interest of Carolyn and Hank in the property was, by reason of the state of the record title, not subject to levy by execution and execution sale in satisfaction of the judgment of Stumer. Decisional and statutory law, however, support a contrary conclusion.
 

 
 *180
 
 “ ‘With the policy of the law, or the abstract morality of a particular transaction, we have nothing to do. The doctrine bearing upon conveyances made to hinder, delay, or defraud creditors has no application to the creation of a homestead.’ ”
 
 (Beaton
 
 v.
 
 Reid,
 
 111 Cal. 484, 487 [44 P. 167].)
 

 “When property fraudulently conveyed is impressed with a homestead the judgment creditor may, if he complies with the procedure provided for in sections 1245-1259 of the Civil Code, reach
 
 any excess
 
 over the homestead exemption in the hands of the transferee. (See
 
 Marelli
 
 v.
 
 Keating,
 
 208 Cal. 528, 531, ... and
 
 Martin
 
 v.
 
 Hildebrand,
 
 190 Cal. 369, 373 [212 P. 618].)”
 
 (Oppenheim
 
 v.
 
 Goodley,
 
 148 Cal.App.2d 325, 329, fn. 3 [306 P.2d 944].)
 

 “Sections 1245-1259 of the Civil Code authorize a levy of execution upon homesteaded property exceeding [the homestead exemption] and a court order ‘directing its sale under execution’ upon a compliance with the procedure prescribed by said sections. . . . The levy of the writ of execution is a necessaiy step in the proceedings in order to subject the excess to the satisfaction of the judgment and is effectual to create a lien upon the property which is valid against third persons to whom the judgment debtor may convey the property.”
 
 (Marelli
 
 v.
 
 Keating, supra,
 
 208 Cal. 528, 530.)
 

 Under Civil Code section 3439.09 “(a) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser or encumbrancer for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser or encumbrancer:
 

 “(1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
 

 “(2) Disregard the conveyance and attach or levy execution upon the property conveyed.”
 

 In
 
 Blue
 
 v.
 
 Superior Court,
 
 147 Cal.App.2d 278 [305 P.2d 209], petitioner recovered judgment in January 1965 against one Raymond Pepe (Pepe), husband of Mavis Pepe (Mavis). Thereafter, he caused an execution to be levied upon certain real property and filed his petition for persons to appraise the value of the property. In this petition he alleged all of the
 
 *181
 
 facts required by section 1246 of the Civil Code, including the fact that on the 21st day of February, 1955, Mavis had recorded a declaration of homestead upon the property; that Pepe had conveyed the same to Mavis as her separate property because he had incurred debts beyond his ability to pay, and the conveyance was made with actual intent to hinder, delay, and defraud his creditors. He further alleged that pursuant to section 3439.09, subdivision (a)(2), of the Civil Code, he elected to disregard said conveyance and levy upon the subject property.
 

 The trial court concluded as a matter of law that Mavis was the owner of the real property and that petitioner was not entitled to any of the remedies provided for by division 2, part 4, title 5, chapter 1 (homesteads) of the Civil Code. The Court of Appeal, reversed, holding that the trial court had acted in excess of its jurisdiction by quashing the execution and had abused its discretion when, having found that the property had a value in excess of the homestead exemption of $12,500, it had refused to either appoint appraisers or to order a sale of the property under the execution.
 

 It was stated in
 
 Blue
 
 at pages 283-284: “It is ... established that no one except the judgment debtor may move to quash a writ of execution or the levy thereof unless the judgment upon which it is issued is, or the writ is, void on its face. [Citations.] . . . [¶] . . . [Petitioner, as the judgment creditor of Pepe, had the right to bring an action in the nature of a creditor’s bill to set aside the conveyance ... or he had the right, under section 3439.09, subdivision 2, of the Civil Code, to ‘Disregard the conveyance and attach or levy execution upon the property conveyed.’ The property conveyed being subject to a valid homestead it was necessary, in the prosecution of the right thus given him to file his petition under section 1246, to have the property appraised and its value determined. It is evident therefore that if his right to have the property appraised and then sold under execution may be defeated by the court, upon the proceedings for the appointment of appraisers, holding that there was no fraudulent conveyance, the provisions of section 3439.09 . . . are rendered meaningless.” (See also
 
 Michal v. Adair,
 
 66 Cal.App.2d 382, 387 [152 P.2d 490].)
 

 Thus in the instant case the subject property, appearing of record in the name of Carolyn, was subject to levy and execution by creditors of Hank. Although the property had been transferred back and forth between various parties, it was Hank and Carolyn’s joint residence and encumbrances were placed thereon by Hank. Sturner therefore had sufficient
 
 *182
 
 notice that Hank had an interest in the property and was required to comply with section 1245 et seq. of the Civil Code in order to perfect any rights in the properly. The California Legislature having provided this procedure for reaching the excess value over a statutory homestead exemption, it is
 
 the only method
 
 by which it may be reached.
 
 (Swearingen
 
 v.
 
 Byrne, supra,
 
 67 Cal.App.3d 580, 585;
 
 Viotti
 
 v.
 
 Giomi, supra,
 
 230 Cal.App.3d 730, 737.)
 

 Sturner, as noted, did not obtain a writ of execution or comply with section 1245 of the Civil Code. Instead, Sturner chose to bring the instant action. Accordingly, absent the levy of an execution on the homesteaded property, the judgment was not secured by any kind of a lien
 
 (Boggs
 
 v.
 
 Dunn, supra,
 
 160 Cal. 283, 287-288;
 
 Swearingen
 
 v.
 
 Byrne, supra, 61
 
 Cal.App.3d 580, 587), and Sturner’s equitable lien could not have attached to the excess value at the time of conduct giving rise to it, (as Sturner urges on appeal) or at the time the parties appeared in the instant action. At the time Hank was adjudged bankrupt, the judgment was not á lien (equitable or otherwise), but was merely a personal liability. An order of bankruptcy setting aside exemptions is res judicata as to the exemption of the property against creditors without liens.
 
 (Thomas
 
 v.
 
 Speck, supra,
 
 47 Cal.App.2d 512, 519.) Therefore, Sturner’s judgment was discharged in the bankruptcy proceedings.
 

 The judgment reading “PlaintifFs-in-Intervention, Harry Stumer and Frances Stumer, have no equitable hen by way of a creditor’s bill in equity as judgment creditors of Hank Gordon upon said real property,” for the reasons stated, is affirmed.
 

 Kaus, P. J., and Stephens, J., concurred.
 

 A petition for a rehearing was denied July 18, 1978, and the petition of the interveners and appellants for a hearing by the Supreme Court was denied August 24, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.
 

 [1]
 

 That portion of the judgment awarding Carolyn an undivided one-half community property interest in the subject property free of any equitable liens and awarding Carolyn a senior lien for one-half of her payments on the principal of the Gibraltar loan, was reversed with directions for a new trial limited to the issue of whether Carolyn’s payments on the subject property constituted an investment in or a loan or gift to the community, and, as such, what portion, if any, of the property became her separate property.
 

 [2]
 

 Subsequent to the filing of this appeal Hank and Carolyn resolved their differences with Engelman and entered into a stipulation directing reversal of the trial court’s judgment in favor of Engelman. The Gordons, the Engelmans and the Sturners, at our request, all agreed that the reversal would not prejudice Sturner’s appeal and we signed the judgment of reversal. This opinion addresses itself only to the Sturner appeal.
 

 [3]
 

 Our opinion makes it unnecessary to review the correctness of this particular ruling. We left it in because it explains Sturners’ reason for appealing. Readers of this opinion are not to interpret our silence as an approval of the court’s determination of this issue.
 

 [4]
 

 The exceptions are: (1) the creditor’s judgment has been obtained before the homestead was recorded; (2) the debt is secured by the liens of mechanics, contractors, subcontractors, artisans, architects, builders, laborers, materialmen and vendors; (3) debts secured by encumbrances on the premises executed and acknowledged by husband and wife, by a claimant of a married person’s separate homestead, or by an unmarried claimant; or (4) the debt is secured by an encumbrance on the premises which was recorded before the homestead.