**In re Robert Joseph WEIMAN, aka R. J. Weiman and Melody Pat Weiman, aka Melody Pat Stanford, Debtors.**

**Robert Joseph WEIMAN, aka R. J. Weiman and Melody Pat Weiman, aka Melody Pat Stanford, Appellant,**

v.

**Robert H. STOPHER, Appellee.**

**BAP No. CC–81–1031–KHV.**

United States Bankruptcy
Appellate Panels
of the Ninth Circuit.

Argued Sept. 16, 1981.

Decided July 14, 1982.

OPINION

Before KATZ, HUGHES and VOLINN, Bankruptcy Judges.

HUGHES, Bankruptcy Judge:

The debtors have appealed an order holding that their home, although exempt from property of the estate, was subject to a continuing lien in favor of the trustee in bankruptcy.

The exemption claim was based on California Code of Civil Procedure § 690.31. The claim of lien was based on 11 U.S.C. § 544(a)(1). The order appealed provides that the trustee may enforce the lien if and when the debtors sell or refinance their exempt home.

Judge Volinn and I agree, but for different reasons, that the order should be reversed to the extent it recognizes a lien.

Accordingly, the order appealed is reversed.

My analysis, which considers only federal law, follows.

## I

Unlike my brothers, I do not believe that 11 U.S.C. § 544(a)(1) gives the trustee a continuing lien on property of the estate. As discussed in Part II, I read the statute as giving the trustee only the rights and powers, i.e., the status, of a judicial lien creditor and then only "as of the commencement of the case..."

Furthermore, any lien created on exempt property by section 544(a)(1) would be nullified by 11 U.S.C. § 522(f)(1), which permits the debtor to avoid any judicial lien on property that impairs the debtors' exemption. It is evident that the trustee seeks to impair Mr. and Mrs. Weiman's exemption by means of a judicial lien.

Section 544 gives the trustee the "rights and powers" of a creditor holding a judicial lien on property of the debtor "as of the commencement" of the case. But any actual judicial lien held by the Weimans' creditors on their otherwise exempt home could have been avoided under section 522(f)(1). *In re Baxter*, 19 B.R. 674 (9th Cir. Bkrtcy. App.1982); *In re Dahdah*, 20 B.R. 665 (9th Cir. Bkrtcy.App.1982). It would be anomalous if section 522(f)(1) could permit the debtor to avoid actual liens but not fictitious ones.

However, in my opinion, there is no need to invoke section 522(f)(1).

## II

The trustee's case rests upon the proposition that 11 U.S.C. § 544(a)(1) gives him a lien on property of the estate. (In the words of the dissent, the "trustee herein obtains a lien" and "his lien could be effective for more than 10 years"). Neither the statute nor the cases construing its predecessor under the former Bankruptcy Act justify that proposition, however. (This section and section 70(c) of the former Act read essentially the same; both are known as the strong arm clause).

In relevant part, 11 U.S.C. § 544(a)(1) provides that the trustee shall have "as of the commencement of the case ... the rights and powers ... of a creditor ... that obtains a judicial lien..." Thus, by its terms the statute does not give the trustee a lien. It does, of course, give the trustee rights and powers of one obtaining such a lien. The important question is how the trustee exercises such rights and powers.

The purpose and operation of the strong arm rights and powers is described in *Sampsell v. Straub*, 194 F.2d 228 (9th Cir. 1951):

Section 70c ... is employed primarily to protect general creditors of the bankrupt against secret liens. To this end the trustee is given all the rights which a creditor with a lien by legal or equitable proceedings would enjoy.

The court also noted that section 70c "arms the trustee" with these rights and powers "as to all property of the bankrupt on the date of bankruptcy..."

The date of bankruptcy is critical under the Code, as it was under the former Act. That date (sometimes called the date of cleavage) determines property of the estate and claims that may be asserted against the estate. See, e.g., 11 U.S.C. §§ 541(a)(1) and 502(b)(1).

Armed with the rights and powers of a judicial lien holder as of the commencement of the case, the trustee is enabled to free property of the estate of certain liens. It is not necessary for purposes of the strong arm powers that they exist at any time after commencement of the case, although the trustee necessarily will assert them at a later date.

Accordingly, the trustee has cited no cases under the Act in which the concept of a continuing lien has been recognized, and I am aware of none.

The strong arm clause was not restricted to avoiding secret liens under the Act. It also was used to restrict the debtor's right to an exemption in those states, such as California, where a judgment lien is enforceable notwithstanding a subsequently recorded homestead. *Sampsell v. Straub*, supra.

*Sampsell v. Straub* held that because the California judgment lien overrides "a tardily recorded homestead exemption" and because "at the date of bankruptcy" the trustee had the powers of a judgment lien holder, the bankrupt's exemption could not be honored if the "declaration of homestead had not been recorded as required to become effective under California law until after bankruptcy adjudication." Thus, as to the trustee in bankruptcy, it was immaterial that the homestead be recorded at all; if it were not of record on the date of bankruptcy, the property was not exempt in bankruptcy.

*Sampsell v. Straub* does not, therefore, supply any authority for a continuing lien in favor of the trustee.

I would rest reversal on a reading of 11 U.S.C. § 544(a)(1) that restricts the trustee to the rights and powers of a judicial lien holder and then only as of the commencement of the case.

VOLINN, Bankruptcy Judge, concurring.

While I agree with the result of Judge Hughes' opinion, I do not agree with its reasoning. Consequently, I feel constrained to set forth, in some detail, my views as they relate to the foregoing opinion and also to the dissent. The Conclusion states my basic point of view.

## I.

### FACTS AND BACKGROUND

The debtor had initially claimed a homestead under the basic homestead statutes of California, Civ.Code § 2130 *et seq.* The debtor's equity in the property did not exceed the statutory maximum. The trustee attacked this declaration for want of a proper legal description. The debtor then moved to amend his bankruptcy exemption schedule, contending that his residence was exempt pursuant to another homestead statute, the automatic "dwelling house" exemption provided by C.C.P. § 690.31. The trustee opposed the amendment, pursuant to § 690.31(b)(1), because the debtor "has an existing declared homestead." The trial

court ruled, first, that this exception to availability applied to an existing "*valid* homestead" (emph. supp.). Therefore, the trial court held § 690.31 was available to the debtor. However, it was further held that the trustee was vested, by virtue of 11 U.S.C. § 544, with the judgment lien of C.C.P. § 674(c) in the amount of the allowed claims in the estate. In so holding, the trial judge felt he should defer to the precedent set by a colleague in a similar case, *In re Gale,* No. S.A. 80–0082AP. (B.Ct.C.D.Cal.1980). He stated that a ruling to the contrary in a similar case in the Northern District of California, *In re Moore,* No. 4–79–2441 H.S. (B.Ct.N.D.Cal. 1980) was preferable, and would have been followed but for the precedent in his own district. Both *Moore* and *Gale* dealt with California law and the basic question as to whether the lien provided for by § 674 could attach to the dwelling house. Each decision focuses on interpretation of state law.

## II.

### ISSUE

The essential issue is whether the trustee may, pursuant to 11 U.S.C. § 544, invest himself with the right of a judgment lien creditor created by C.C.P. § 674(c). The issue turns on interpretation of the United States Bankruptcy Code. This is a federal question governed by the Code, and not state law. 4B Collier on Bankruptcy ¶ 70.49 at 602–03 and cases cited at n.5, n.7 (14th ed. 1978).

## III.

### THE PRINCIPAL OPINION

The principal opinion states that § 544 confines the trustee's derivative lien to a "moment" in time which, in its statutory terms, exists at the commencement of the case. It appears to reason that the lien may not subsist or continue on so as to apply to property which is sought to be exempted from the estate. Such an argument disregards the nature of a lien. It is there to begin with and continues on to

ripen upon the happening of events which bring about the need for its application. This is characteristic of security interests, generally, which lead a contingent existence with respect to collateral until needed. But the liens are existing and continuing interests until the debt is paid. While I do not agree that such a result obtains here, because of the reasons stated below, the lien of C.C.P. § 674(c) is not any less viable because it was designed to enforce payment when conditions permitting exemption under C.C.P. § 690 are inapplicable (e.g., excess equity), then a lien providing for recourse to collateral in the event the debt is not paid.

The opinion further states that not only are the trustee's rights and powers restricted to a moment in time, but further the trustee does not receive a judicial lien by virtue of 11 U.S.C. § 544 but only the "rights and powers" of a judicial lien holder. This argument appears to give the trustee the power to avoid liens as if he were a judicial lien creditor but not the lien itself. The reasoning does not square with the language of § 544 nor the reasoning of *Sampsell v. Straub*, 194 F.2d 228 (9th Cir.) *cert. denied*, 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338 (1952). The effort to distinguish *Sampsell* demonstrates that there was an interception of the right to declare a homestead by the filing of the bankruptcy and the trustee's claim of precedence to the subject property. The court held that it was the trustee's status or character as a judgment lien creditor which provided the rationale for depriving the debtor of the homestead. Functionally, the trustee was a judgment lien creditor.

Finally, it is stated 11 U.S.C. § 522(f) may be invoked to avoid the lien of C.C.P. § 674(c). The problem which arises in applying § 522(f) to C.C.P. § 674(c) is that it is structurally or organically part of § 690.-31: "the very same act by which section 690.31 was enacted added subdivision (c) to Code of Civil Procedure section 674. . . . " *Krause v. Superior Court*, 78 Cal.App.3d 499, 507, 144 Cal.Rptr. 194, 198 (1978). Section 674(c) provides that as to the dwelling house, judicially determined to be exempt from levy of execution under § 690.31:

"A judgment lien created pursuant to subdivision (a) of this section shall attach to such real property notwithstanding the exemption provided by Section 690.31."

It is contended that this is an impairment of the exemption and subject to avoidance under § 522(f). However, it is clear that, with respect to exemption, the California legislature gave the lien effect only when conditions supporting the exemption are inapplicable. To put it otherwise, the legislation does not allow the lien to impair the exemption.

The legislative history to 11 U.S.C. § 522(f) states:

"[t]he debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien. . . . " H.R.No.95–595, 95th Cong., 1st Sess. (1977) 362; S.R.No. 95–989, 95th Cong., 2d Sess. (1978) 76 under subsection (e)), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, 6318.

Since the lien of C.C.P. § 674 does not intrude upon the exemption of C.C.P. § 690, there is nothing to avoid.

## IV.

### THE DISSENT

While there may be some question as to the nature and application of the C.C.P. § 674(c) lien in a non-bankruptcy setting, the threshold question here is whether a trustee in bankruptcy may be invested with such a lien by virtue of 11 U.S.C. § 544, the Bankruptcy Code descendant of § 70(c), the strong-arm clause of the prior Bankruptcy Act.

The dissent discusses § 70(c) in historical context stating that its purpose was to cut off" secret and undisclosed claims" against (the debtor's property) and to equalize "distribution of assets to all unsecured creditors." This is true. However, the fictional status of a judgment creditor with a lien or unsatisfied execution against the debtor's property was created as a test with respect to the validity of various transfers of the

debtor's property as to particular creditors. In the event the transfer could be held invalid or inferior to the rights of the hypothetical creditor of § 544, it would be voidable by the trustee and could be automatically preserved for the benefit of the estate, 11 U.S.C. § 551.

It should be noted that the trustee does not seek to invoke his hypothetical status to test the validity of or set aside a pre-bankruptcy transfer to another creditor. He seeks instead to affect the debtor's homestead property by claiming hypothetical status under § 544, with an inchoate lien which would lie dormant until the debtor's post-bankruptcy circumstances would cause it to come to life. Use of the rights and powers given the trustee by § 544 for purposes other than avoiding transfers to creditors has been rare if not anomalous.[1] 4B *Collier on Bankruptcy* ¶ 70.54 at 642 *et seq.* (14th ed. 1978).

The dissent cites *In re Martin*, No. 80–1054 (BAP 9th Cir. 1982), and *In re Sanford*, 8 B.R. 761, 7 B.C.D. 729 (N.D.Cal.1981) as supporting the vesting of the § 674 lien in the trustee by virtue of 11 U.S.C. § 544. Those cases held the trustee may not use 11 U.S.C. § 544 to defeat the debtor's *claim of homestead* under C.C.P. § 690. They provide no conceptual basis for the position of investing the trustee with the § 674 lien.

A bankruptcy estate consists of the debtor's property acquired by him prior to the date he files a petition in bankruptcy. Thereafter, the fundamental premise is that the debtor should be free to make a fresh start without having to apply future earnings or acquisitions (with limited exceptions) to pre-bankruptcy debt, 11 U.S.C. § 541(a)(6).[2] The question is whether the trustee, by virtue of § 544, coupled with the C.C.P. § 674, can reach post-bankruptcy accruals of equity in property which the debtor has declared exempt under California's automatic dwelling house exemption.

There is an inherent contradiction in allowing discharged creditors, by virtue of invoking § 544, to have access to the debtor's *future earnings, as they become equity*, or to the homestead itself should the debtor, years later, desire to leave it.[3] The stay provisions of § 362, and the character of discharge as an injunction, 11 U.S.C. § 524(a), in order to serve such a fresh start would be subverted. The debtor, instead of having a fresh start, would have a homestead subject to doubt and uncertainty during the lifetime of the C.C.P. § 674(c) lien. Moreover, such a result would violate the spirit, if not the letter, of 11 U.S.C. § 522(c) which provides that property exempted under § 522 is not liable during or after the case for pre-bankruptcy debts.

## V.

## CONCLUSION

Should the fiction of § 544 endow the claims of general creditors with the quality of a non-dischargeable debt? While fictions

---

1. *Sampsell v. Straub, supra*, permitted such a result. That case held that the trustee, standing as a judgment creditor under § 70(c), defeated the debtor's homestead since the debtor filed his declaration of homestead after he filed his bankruptcy petition. The effect of *Sampsell* in California is considerably attenuated under the Bankruptcy Code since a claim, directly impairing the exemption, is subject to avoidance by virtue of 11 U.S.C. § 522(f). *In re Baxter*, 19 B.R. 674 (Bkrtcy.App. 9th Cir. 1982).

2. Section 541(a)(6) states what is in the estate, with an exception:

    "(6) Proceeds, product, offspring, rents, and profits of or from property of the estate, *except such as are earnings from services performed by an individual debtor after the commencement of the case.*" (Emph. supp.)

While the dissent professes to preclude access by the trustee to post-bankruptcy accruals in equity, its water bottle analogy suggests a contrary result. It would hold that the post-bankruptcy equity accruals would cause the frozen exemption to rise and spill over into the hands of the waiting trustee.

3. The primary purpose of § 674 was to provide creditors with automatic access to surplus equity (over the homestead) in contradistinction to Calif.Civ.Code, § 1260, which does not allow such access. The unlikely availability of the entire homestead through abandonment or waiver would hardly warrant legislative concern since the most logical event which occurs over the ten year life of the lien would be equity build-up.

may be useful, they should not be employed to bring about a result which is so contrary to the fundamental fresh start policy of the Bankruptcy Code. There should be limits to literal application of language bringing about results so much at odds with the purpose and policy of rehabilitative legislation. As stated in *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966)

(1966)

> Yet we do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.

See also *Lewis v. Manufacturer's Trust*, 364 U.S. 603, 608, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961) which refused to allow the application of § 70(c) to a point anterior in time where no creditor could have existed, stating:

> The construction of § 70c which petitioner urges would give the trustee the power to set aside transactions which no creditor could void and which injured no creditor. That construction would enrich unsecured creditors at the expense of secured creditors, creating a windfall merely by reason of the happenstance of bankruptcy.

The substance and spirit of this language should preclude the trustee from employing the fiction of 11 U.S.C. § 544 to deny or limit the homestead, thereby creating a windfall for discharged general creditors.

For the foregoing reasons I would hold that the trustee may not invoke or clothe himself with the judgment lien of C.C.P. § 674(c) and would therefore reverse.

KATZ, Bankruptcy Judge (dissenting):

As evidenced by the majority and concurring opinions, no two issues addressed in this case have received unanimous approval by the Panel. The reason for this is that the inter-relationship between California's peculiar dwelling-house exemption and the operation of several sections of the Code is hard to define. The ability to differentiate between operation of law and achievement of desired results is key to reaching a proper decision in this case. While I agree with the concurring opinion that § 522(f) is ineffective as against a lien created under California Code of Civil Procedure § 674(c), I part sides with the majority on the issue of whether or not the trustee receives a lien, which could eventually reach some if not all of the debtor's equity in his dwelling house after the bankruptcy is filed.

In my opinion the practical effect of the majority opinion is to elevate the California automatic homestead to a position far superior than was ever intended by the California Legislature. While I further agree that the fresh start of the debtor is particularly important to preserve, I believe the Code and the confines of due process limit our ability to grant exemptions beyond that which is embraced by the exemption chosen by the debtor.

The basis for my dissent is an acute understanding of the nature and purposes of both the limited nature of the California dwelling-house exemption and the operation of the Bankruptcy Code. This understanding for the most part is brought out by a historical and logical analysis of the provisions in question.

California Constitution, Article XX, Section 1.5 provides: "The legislature shall protect, by law, from *forced sale* a certain portion of the homestead and other property of all heads of families." [Emphasis added.] In 1872 California Civil Code § 1237 *et seq.*, was created to provide a strict scheme by which a homeowner could formally record a homestead on a residence and exempt his home from execution of a judgment and forced sale. *See San Diego County Carpenters Group Ins. v. Lorea*, 112 Cal.App.3d 221, 169 Cal.Rptr. 157 (1980).

In 1975, California Code of Civil Procedure § 690.235, now Code of Civil Procedure § 690.31, was enacted as an alternative method to protect a homeowner's homestead exemption. Code of Civil Procedure § 690.31 provides in part:

> "(a)(1) A dwelling house in which the debtor or the family of the debtor actually resides shall be exempt from execution,

to the *same extent and in the same amount* except as otherwise provided in this section, as the debtor or the spouse of the debtor would be entitled to select as a homestead pursuant to Title 5 (commencing with Section 1237 ...." [Emphasis added.]

The new dwelling-house exemption was automatic in that no formal declaration of homestead needs to be recorded to gain the protection of the homestead. *San Diego White Truck Company v. Swift*, 96 Cal. App.3d 88, 92, 157 Cal.Rptr. 745 (1979). The legislative purpose behind the dwelling-house exemption was to ensure that a homestead exemption was not a mere formality available only to the knowledgeable, but to make sure that all who are entitled to it had an opportunity to secure the exemption.[1] *National Collection Agency v. Fabila*, 93 Cal.App.3d Supp. 1, 155 Cal.Rptr. 356 (1979).

The net effect of the dwelling-house exemption is that every dwelling house in California in which the debtor or the debtor's family actually resides is exempt from execution by any creditor unless that creditor would have been entitled to execute his judgment against the property even if it had been properly homesteaded at the time the judgment became a lien. *See In re Sanford*, 8 B.R. 761 (D.C.N.D.Cal.1981). This application, however, is tempered by the major difference between the two homestead laws in that a judgment lien will attach to a dwelling exempt under Code of Civil Procedure § 690.31, but will not attach to a dwelling which has been formally homesteaded. Code of Civil Procedure § 674(c); *Krause v. Superior Court*, 78 Cal. App.3d 499, 144 Cal.Rptr. 194 (1978); *Engelman v. Gordon*, 82 Cal.App.3d 174, 178, 146 Cal.Rptr. 835 (1978).

The major issue herein is where do the trustee and creditors stand in relationship to a dwelling-house exemption when bankruptcy law is superimposed on the operation of the exemption. The law has long been well settled that the trustee and creditors in bankruptcy stand junior to a property recorded homestead. The law with respect to the automatic dwelling-house exemption is in need of clarification.

In the recent case of *In re Martin*, (9th Cir. BAP 1982), this Panel held that 11 U.S.C. § 544 cannot be invoked by the trustee to defeat the debtor's dwelling-house exemption. Unlike the adverse result under the Act, the dwelling-house exemption prevents the trustee from achieving outright ownership of the dwelling on the date of the bankruptcy is filed. *Compare In re Martin, supra* and *In re Campbell*, 5 BCD 6 (S.D.Cal.1978). Notwithstanding this holding, I believe the trustee is vested with certain rights which preserve equity in the dwelling for the estate to be realized at a point in time when the equity in the dwelling is no longer protected. This result is reached through the interplay between 11 U.S.C. § 544 and the limited nature of the California dwelling-house exemption.

In addition to the rights conferred on the trustee in §§ 541 and 363, the trustee also derives the right to proceed against property under § 544 (11 U.S.C. § 544). Section 544(a)(1) gives the trustee the *rights and powers of a creditor who obtains a judicial lien on all property on which a creditor on a simple contract could have obtained a lien. *See also In re Sanford, supra*. Similar to the dwelling-house exemption, the nature and purpose of the trustee's § 544 powers are better defined by a historical review of the section's derivation.

---

1. In a nonbankruptcy case the exemption is secured by requiring a hearing before a writ of execution can be issued against a dwelling. Code of Civil Procedure § 690.31. An alternative procedure under Code of Civil Procedure § 690.31(h) may be utilized by the debtor to postpone an execution sale of the dwelling when the debtor failed to appear at the exemp-

tion hearing due to mistake, inadvertence, surprise or excusable neglect. The inclusion of these provisions in the dwelling-house exemption law indicates a strong legislative intent to give uninformed homeowners every possible chance to save a portion of their homesteads against execution.

Section 544 is the descendant of over eighty years of case law interpretation and statutory evolution. In 1910 Section 47, cl.2(a) [11 U.S.C. § 75(a)(2)] was amended such as to vest in the trustee for the interest of all creditors the potential rights of creditors possessing or holding liens upon the property coming into his custody by legal or equitable proceedings. *Pacific State Bank v. Coats*, 205 F. 618 (9th Cir. 1913). The major purpose of this amendment was to allow the trustee to cut off secret and undisclosed claims against the property. By cutting off these secret interests the bankruptcy laws brought about uniformity in administration and equalized the distribution of assets to all unsecured creditors. *In re Floyd-Scott Co.*, 224 F. 987 (D.Mass.1915); *In re Horton*, 31 F.2d 795 (W.D.La.1928). By placing the trustee in the status of a lien creditor, the 1910 amendment sought to vest the trustee with the rights of those creditors who had yet to obtain liens either by equitable or legal proceedings. *See Pacific State Bank v. Coats, supra*, at 622.

Under the Act the trustee could exercise his rights as a lien creditor to reach any asset which an ideal lien creditor could reach. *Bass v. Aetna Factors Co.*, 272 F.2d 707 (9th Cir. 1959). Thus, the trustee could either bring into the estate, or preserve for the estate, any and all property available at the time the petition was filed, to which his lien rights attached. *See In re Carl*, 38 F.Supp. 414 (W.D.Ark.1941); *Commercial Credit Co. v. Davidson*, 112 F.2d 54 (5th Cir. 1940); *Bass v. Aetna Factors Co., supra*.

The enactment of § 544 in effect broadened the rights which were available to the trustee under prior §§ 70(c), 70(e) and 60(a)(4) of the Act. [11 U.S.C. §§ 110(c)(e), 96(a)(4); 124 Cong.Rec.H. 11,097 (Sept. 28, 1978); S. 17, 413 (Oct. 6, 1978).] Under § 544(a) the trustee not only may seek to avoid transfers of property, but is additionally vested with any rights available to a creditor holding a judicial lien obtained in an action on a simple contract, *whether or not such a creditor exists*.

When viewing the powers of the trustee under § 544 along with prior case law discussions and other provisions of the Code, a clear pattern emerges. The § 544 powers given to the trustee are a form of bankruptcy trade-off. In exchange for having their debts discharged, the unsecured creditors are given certain rights, albeit artificial rights, which have the effect of bringing into the estate all property which could have been available to them on the day bankruptcy was filed. The debtor, on the other hand, is given a discharge of his debts and receives a fresh start through the election of exemptions under § 522.

Given the purposes of the trustee's rights under § 544(a) and the trade-offs inherent in the bankruptcy laws, it makes good sense to apply these considerations in determining a value for the trustee's lien. Consistent with these considerations and purposes I would hold that the value of the lien obtained under § 544(a) is the lesser of the total of all unsecured claims or the amount of equity in the property upon which the § 544(a) lien could attach on the date the petition is filed. By limiting the value of the lien to the value of property available on the date the petition was filed, the rights of creditors to secure equality in distribution and the legislative priority of preserving to the debtor a fresh start are fully balanced.

Under a normal absolute exemption statute a lien valuation would not be necessary. The peculiar limited nature of the California dwelling-house exemption, however, requires that the lien of the trustee be valued currently such that it can be paid in the future when the exemption no longer prevents execution on the property.

Having reached this point the question arises as to the length of time the trustee should be able to exercise his rights in the equity preserved for the estate.

There is nothing in the Bankruptcy Code to indicate that the trustee's rights as a judicial lien creditor are confined to the point in time when the bankruptcy case is commenced. That is merely the time the trustee's rights are created. *In re Bouchard*, 11 B.R. 869 (Bkrtcy.S.D.Cal.1981). The

trustee herein obtains a lien which is measured by the rights that a judicial lien creditor would have under the laws of California. *In re Sanford, supra.* Under California law a judicial lien exists a minimum of 10 years unless extended through supplemental proceedings. California Code of Civil Procedure §§ 674(a), 685. Therefore, I would hold that as long as the trustee remains in the case his lien could be effective for more than 10 years.

Having discussed the trustee's lien, its value, and effective life, we must now discern what effect California law would have on the trustee's lien. Under California law, a lien creditor can execute against the dwelling house of the debtor after application has been made and the court finds that the current value of the dwelling house, over and above all liens and encumbrances thereon, exceeds the amount of the allowable exemption. Code of Civil Procedure § 690.31(c). Even though a judicial lien attaches to the property under Code of Civil Procedure § 674(c), it is clear that this lien is junior to the exemption amount as long as the debtor does not voluntarily sell the dwelling and reinvests the proceeds from any execution sale within six months into another dwelling in which the debtor or his family actually resides. *See* Code of Civil Procedure § 690.31(j), (k); *Ortale v. Mulhern,* 58 Cal.App.3d 861, 864, 130 Cal.Rptr. 277 (1976). Therefore, if there is excess equity above liens and the homestead amount, or the debtors sell the dwelling or voluntarily move out, the lien would need to be paid to the extent the proceeds would no longer be exempt. *See* CCP § 690.31(j)[2]

The concurring opinion claims that there is an inherent contradiction in allowing discharged creditors, by virtue of invoking § 544, to have access to the debtor's post bankruptcy accruals in equity and future earnings. This proposition ignores the basis upon which the value of the trustee's lien would be fixed. His rights would be set in an amount certain on the date of the filing of the petition. Thereafter, the creditors would only be entitled to the funds upon which the lien attached. Clearly, any post-bankruptcy accruals in equity or future earnings of the debtor would only inure to the benefit of the debtor and his fresh start.[3]

The majority claims that the result of imparting a lien to the trustee would bring about a result which is contrary to the fundamental fresh-start policy of the Bankruptcy Code. In rendering my opinion, I am mindful that it would open the door to the situation where a debtor moves from the dwelling house 10 years after bankruptcy, but finds the equity in his house suddenly levied upon by the trustee in bankruptcy. Surely a debtor's fresh start is not well fostered by this possibility. Yet on the other hand the result is consistent with both the purposes of the Bankruptcy Code and the purpose of the California automatic dwelling-house exemption. It is consistent with the Code because it provides creditors with every bit of property they are legally entitled to in exchange for having their claims discharged. It is consistent with the California exemption chosen because it ful-

**2.** California Code of Civil Procedure § 690.31(j) provides:
"(j) In the event of an execution sale, the proceeds of the sale shall be applied in the following order and priority: First, to the discharge of all liens and encumbrances, if any, on the property; second, to the debtor, or the debtor's spouse if such person is the exemption claimant, in the amount of the exemption if allowed pursuant to this section; *third, to the satisfaction of the execution,* and fourth, to the debtor, or the debtor's spouse if such person is the exemption claimant." [Emphasis added.]

**3.** The operation of the exemption can be demonstrated by analogy. The California dwelling-house exemption is much like a glass bottle with liquid in it. The bottle represents the expendable nature of the exemption and the liquid, the debtor's equity therein. On the date of bankruptcy a portion of the liquid equal to the trustee's lien is frozen. Thereafter, any post-bankruptcy accruals in equity or future earnings of the debtor fill the bottle with additional liquid. This tends to push the frozen part of the liquid out of the top of the bottle. If down the road the frozen liquid is pushed out of the bottle, or the bottle breaks, the trustee and hence the unsecured creditors are entitled to receive the frozen part of the liquid. The debtor keeps the rest.

ly protects the debtor from the *forced sale* of a certain part of the homestead without providing an alternative chance to start over. *See* CCP § 690.31(j).

When the Bankruptcy Code was drafted, it did not have California particularly in mind. It was written as a universal document with the Code provisions exercised uniformly among the various states. If any result achieved under my view is contrary to a fresh-start policy, it is not because of the universal application of the Code, but instead caused by the peculiar nature of the state exemption relied upon. Any unfortunate result reached under the laws of California can be changed through consideration and action by the California Legislature. This Panel's apparent authority to fractionalize the uniform operation of the Code to obtain a more desired result in California is, in my opinion, not warranted in this case. I would affirm the judgment below, with certain reservations relative to refinancing, and therefore respectfully dissent.

