[Civ. No. 18510. Fourth Dist., Div. One. Aug. 17, 1979.]

SAN DIEGO WHITE TRUCK COMPANY, Plaintiff and Appellant, v. PAUL L. SWIFT, Defendant and Respondent.

**COUNSEL**

O'Neill & Munak and James S. Munak for Plaintiff and Appellant.

Freeman & Gruber and Allen M. Gruber for Defendant and Respondent.

**OPINION**

**WIENER, J.**—Plaintiff San Diego White Truck Company appeals from the order denying its application for issuance of a writ of execution on a dwelling house. (Code Civ. Proc., § 690.31, subd. (m).) At issue is whether the dwelling house exemption, former Code of Civil Procedure section 690.235, effective July 1, 1975, now Code of Civil Procedure section 690.31, applies to a contractual obligation incurred April 23, 1975.[1] ■ We conclude the Legislature intended the section to operate retroactively to include obligations incurred before the effective date of the legislation, and that such application does not unconstitutionally abridge the rights of unsecured creditors.

The facts are not in dispute. On April 23, 1975, defendant Paul L. Swift signed an unsecured promissory note in favor of plaintiff. He defaulted in payment of that note and judgment pursuant to written stipulation in the total sum of $4,888.17 was entered on November 20, 1975. The abstract of judgment was recorded in San Diego County on December 17, 1975. Plaintiff's application for a writ of execution under section 690.31, filed

---

[1]All references are to the Code of Civil Procedure unless otherwise indicated.

For convenience, we refer to section 690.31 rather than 690.235, the differences between the two sections not being significant in this case. In 1976, the Legislature repealed former section 690.235 and section 682b, and enacted section 690.31 with an operative date of July 1, 1977. (Stats. 1976, ch. 1000, § 4, p. 2369.) In 1977, the Legislature amended section 690.31 and related sections, giving the amendatory act the same operative date of July 1, 1977.

on June 12, 1978, was denied on the grounds that the property qualified as a dwelling house and was thus exempt.[2]

At the outset, we note the Appellate Department of the Los Angeles Superior Court in *Daylin Medical & Surgical Supply, Inc.* v. *Thomas* (1977) 69 Cal.App.3d Supp. 37 [138 Cal.Rptr. 878], has held the "residential exemption" amounts to an impairment of the obligation of contract in violation of article I, section 10, of the United States Constitution. ▉ That decision is not a controlling precedent for this court, however, and we believe it appropriate for us to independently evaluate the issue raised. (*Cotton* v. *Municipal Court* (1976) 59 Cal.App.3d 601, 604-605 [130 Cal.Rptr. 876]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 671, pp. 4584-4585.) No other court has faced this identical question for other cases dealing with the retroactive operation of exemption statutes have involved either the creation of a new exemption after the debt was incurred or an increase in the amount of an existing exemption. (See, e.g., *In re Rauer's Collection Co.* (1948) 87 Cal.App.2d 248 [196 P.2d 803] [an *increase* in the homestead exemption could not apply retroactively relying on *Gunn* v. *Barry* (1873) 82 U.S. (15 Wall.) 212 (21 L.Ed. 212) and *Edwards* v. *Kearzey* (1878) 96 U.S. 595 (24 L.Ed. 793)]; or *Medical Finance Assn.* v. *Wood* (1936) 20 Cal.App.2d Supp. 749 [63 P.2d 1219] [the creation of a *new* exemption for motor vehicles could not apply retroactively]; accord *Smith* v. *Hume* (1937) 29 Cal.App.2d Supp. 747 [74 P.2d 566].) We address a different and more narrow question for the homestead exemption, a part of California statutory law since 1872, is hardly a new enactment and the amount of the exemption has not been placed in controversy. ▉ We must decide whether the new and essentially automatic method of obtaining an exemption from execution on a dwelling house under section 690.31, similar to the benefits obtained from a homestead declaration but without the necessary formalities associated with filing homesteads, is constitutionally valid as to unsecured debts incurred before its effective date.

---

[2]Defendant filed a declaration of homestead on January 5, 1976. (Civ. Code, § 1262; see gen. Civ. Code, § 1237 et seq.) Plaintiff did not seek enforcement of its money judgment pursuant to Civil Code sections 1237 through 1259. (See *Krause* v. *Superior Court* (1978) 78 Cal.App.3d 499 [144 Cal.Rptr. 194].) The propriety of the procedure used to obtain the writ or the effect, if any, on defendant's right to the dwelling house exemption, in light of his decision to file a declaration of homestead, was not argued in the trial court nor raised in this appeal. We do not address either question. We also do not address the effect, if any, on the rights of the parties by defendant's unsecured rather than a secured claim in those proceedings. (See generally 3 Collier on Bankruptcy, § 57.07[3] et seq.)

The express language of the legislation reflects the intent of the Legislature to include all debtors regardless of when the debt was incurred. Specifically, former section 682 b, now section 690.31, subdivision (d), requires written notice to the debtor before the hearing on the application for writ of execution to permit the debtor to protect his home by appearing at the hearing and establishing his exemption. Nothing in the statute itself indicates that only debtors whose obligations were incurred after July 1, 1975 need avail themselves of the benefits of the section. The Legislature was aware of the retroactivity problem, for in section 6 of Statutes 1974, chapter 1251, enacting section 690.235, and section 5 of Statutes 1976, chapter 1000, enacting section 690.31, it provided that nothing in the act shall be construed to modify the rights of any lienholder vested before July 1, 1975.

◆

■ Statutes exempting property from execution are to be construed liberally to carry out the intention of the Legislature. (*Holmes* v. *Marshall* (1905) 145 Cal. 777, 778-779 [79 P. 534].) When the dwelling house exemption was first enacted, the Legislature was quite obviously concerned with the large number of homeowners who were not receiving the benefits of the homestead (Cal. Const., art. XX, § 1.5; Civ. Code, § 1240) because of their ignorance of the law or their failure to satisfy the technical requirements for declaring a homestead. Allegedly, less than 5 percent of the homes in California were homesteaded. (*Review of Selected 1974 California Legislation* (1975) 6 Pacific L.J. 125, 214.) The new law gave the debtor-homeowner additional protection for his home against the claims of creditors. He could now either declare a homestead under Civil Code section 1237 et seq. or obtain a "dwelling house exemption." The latter in certain respects a superior and more effective method, for no longer would execution turn on the outcome of the race to the recorder's office with the resultant loss to the debtor if the abstract of judgment preceded the recordation of the homestead. Except as to those creditors whose judgments were recorded before the operative date of the legislation, the debtor-homeowner could now protect his home after the judgment and recordation of the abstract by invoking the benefits of section 690.31. (See 6 Pacific L.J., *supra,* at p. 214; *Krause* v. *Superior Court, supra,* 78 Cal.App.3d 499, 507.)

■ In light of the purpose and language of the legislation, we conclude the Legislature intended the exemption to apply to all debtors regardless when the debt sued upon was incurred.

The contract clause of the federal Constitution, article I, section 10, prohibits a state from passing any law impairing the obligation of contracts. Although the Fourteenth Amendment has assumed a far larger role in constituting adjudication concerning the states, the contract clause was initially one of the few express limitations on state power. (*United States Trust Co.* v. *New Jersey* (1977) 431 U.S. 1 [52 L.Ed.2d 92, 97 S.Ct. 1505, 1514].) The formalistic and doctrinaire analysis of article I, section 10 reflected in earlier decisions has since given way to an approach which eschews ". . . a rigid application of the Contract Clause to invalidate state legislation." (*United States Trust Co.* at p. 16 [52 L.Ed.2d at p. 106, 97 S.Ct. at p. 1514].) In *Home Building & Loan Ass'n.* v. *Blaisdell* (1934) 290 U.S. 398 [78 L.Ed. 413, 54 S.Ct. 231, 88 A.L.R. 1481], Chief Justice Hughes made clear the constitutional prohibition was "not an absolute one and is not to be read with literal exactness like a mathematical formula" (*id.,* at p. 428 [78 L.Ed. at p. 423]) and in *El Paso* v. *Simmons* (1965) 379 U.S. 497 [13 L.Ed.2d 446, 85 S.Ct. 577], the court held that "it is not every modification of a contractual promise that impairs the obligation of contract under federal law. . . ." (*Id.,* at pp. 506-507 [13 L.Ed.2d at pp. 453-454].) The state "has the 'sovereign right . . . to protect the . . . general welfare of the people' " and " 'we must respect the "wide discretion on the part of the legislature in determining what is and what is not necessary." ' " (*Id.,* at pp. 508-509 [13 L.Ed.2d at p. 455].) ■ Our examination of the legislation under *Blaisdell* and *United States Trust Co.* requires more than the inquiry into the impairment of the contract for if the legislation is in furtherance of a legitimate state interest and is a reasonable means of pursuing that interest, it is valid. (See Danny, *The Contract Clause and the Constitutionality of Retroactive Application of Exemption Statutes: A Reconsideration* (1978) 9 Pacific L.J. 889, 906.)

■ In *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546, P.2d 137], our Supreme Court has set forth guiding principles for making a determination of whether a retroactive law contravenes a party's due process rights. We apply those principles for they are consistent with the factors required by *Blaisdell* and *United States Trust Co.* and constitutional analysis of the contract clause in the context of this case now appears to be indistinguishable from that of the due process clause. (9 Pacific L.J., *supra,* at p. 900.) The factors to be considered include: "[T]he significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and

the extent to which the retroactive application of the new law would disrupt those actions. [Citations.]" (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 592.)

Essential to the state's continuing interest in the welfare of its citizens is the proper balance between the rights of creditors and debtors. In striking this balance, California statutes have always provided for exemptions to those persons unable to pay their debts. Our original Constitution required the Legislature to protect, by law, the forced sale of a portion of the homestead and other property of all heads of families. (Cal. Const., art. XVII, § 1, now art. XX, § 1.5.) The broadest application of section 690.31 is necessary to accomplish its benevolent purpose, for to hold otherwise would be to perpetuate the fortuitous benefits of the homestead laws to only those filing declarations and depriving those benefits to others similarly situated who, through inadvertence or otherwise, have failed to comply with the statute. The loss of a home in satisfaction of a debt should not revolve on the legal expertise of the debtor in perfecting his homestead, but rather whether the debtor can factually establish his qualification for the exemption.

A major purpose underlying both the contract clause and the last four factors referred to in *Bouquet* is economic stability essential for the maintenance of private and public faith in commercial matters. (*Ogden* v. *Saunders* (1827) 25 U.S. (12 Wheat.) 213, 354-355 [6 L.Ed. 606, 654-655].) The retroactive application of the dwelling house exemption has a minimal effect, for the rights of creditors in California have always been subject to the homestead. Any reliance by a creditor on the debtor's failure to seek the benefits of that statute is questionable. Commerce is not disrupted when the only change in the law is the Legislature's reasonable action in removing gamesmanship from an exemption statute to assure its proper application. ■ Section 690.31 does not represent an unconstitutional deprivation of a creditor's property right in those cases where the unsecured debt was incurred before the effective date of the legislation, but the abstract of judgment recorded after that date.

The order is affirmed.

Staniforth, Acting P. J., and Focht, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.