[Civ. No. 51806. First Dist., Div. Three. Dec. 6, 1982.]

WAYNE A. INGEBRETSEN et al., Plaintiffs and Appellants, v.
RALPH EDWIN McNAMER, Defendant and Respondent.

**COUNSEL**

Hanson, Bridgett, Marcos, Vlahos & Stromberg and Paul A. Gordon for Plaintiffs and Appellants.

Cohen & Jacobson and Henry Cohen for Defendant and Respondent.

**OPINION**

**WHITE, P. J.**—Plaintiffs and appellants Wayne A. and Ann M. Ingebretsen appeal from an order of the San Francisco Superior Court to sell homestead and issue writ of execution against a dwelling house in which the homestead exemption was determined to be $40,000. We believe this exemption to be the correct one and so affirm the order.

*Facts*

On August 6, 1976, a default judgment was entered against defendant and respondent Ralph Edwin McNamer (hereafter respondent) for the wrongful death of appellants' 11-year-old son 2 years earlier. Total damages awarded were $66,050.

According to the record, no effort was made to satisfy the judgment until October 26, 1979, when a writ of execution was levied on respondent's homestead. Changes in Civil Code section 1245, effective January 1, 1980, required appellants to take additional procedural steps before the order to sell was issued September 4, 1980. Respondent's property was appraised that year at $125,000.

At the time respondent declared his homestead and at the time judgment for appellants was entered, the statutory homestead exemption was $20,000. (Stats. 1970, ch. 319, § 1, p. 714.) In 1977, the exemption was increased to $30,000 (Stats. 1976, ch. 132, § 1, p. 211) and at the time the order to sell was issued another legislative increase had made the exemption $40,000 (Stats. 1978, ch. 993, § 1, pp. 3066-3067.) The last exemption was the one applied to respondent's homestead.

■■ Appellants argue that the applicable exemption is the one in effect at the time the judgment was entered. Their argument is based on Civil Code section 1260, subdivision (b).[1] This section permits an amendment which increases the amount of homestead exemption to operate retroactively, i.e., the exemption amount at the time of declaration is automatically increased to the amount in the amended statute. The increase may be claimed so long as no preexisting right of any creditor to execute upon the property is impaired.

Appellants believe their vested right to execute on their judgment is impaired by application of the higher exemption because it reduces the amount of excess above the exemption by which they can satisfy their judgment. To illustrate: if the higher exemption is applied, the excess is $125,000 minus $40,000 or $85,000 (less encumbrances). ■ ■■■ If the lower exemption is applied, appellants would have $105,000 of excess on which to levy.[2]

---

[1]Civil Code section 1260, subdivision (b) reads: "Any declaration of homestead which has been filed prior to the operative date of any amendment to this section which increases the value of property which may be selected and claimed as a homestead shall be deemed to be amended on such date by increasing the value of any property selected and claimed to the value permitted by this section on such date to the extent that such increase does not impair or defeat the right of any creditor to execute upon the property which existed prior to such date."

[2]Any excess is further reduced because the property is held in joint tenancy. Only the property in which the tortfeasor has an interest is liable for satisfaction, but the entire exemption applies

Respondent does not dispute that appellants have a vested right to have their judgment satisfied any time within 10 years of the judgment. (Code Civ. Proc., § 681.) His argument is that the right to execute against homesteaded property does not vest until the court has determined how much, if any, of the homestead is exempt from execution. (Civ. Code, § 1250.) The impairment language in Civil Code section 1260, he argues, refers to the right to execute against the homestead, not the right to execute on any judgment.

Case law adhering to the California Constitution[3] has long held that the homestead statutes are to be construed liberally on behalf of the homesteader. (*Swearingen* v. *Byrne* (1977) 67 Cal.App.3d 580, 584 [136 Cal.Rptr. 736]; *Schoenfeld* v. *Norberg, supra,* 11 Cal.App.3d 755, 764.) This is well illustrated in the *Swearingen* case. There it was held that the recording of an abstract of judgment, which normally establishes a lien upon the real property of the judgment debtor (Code Civ. Proc., § 674) does not establish a lien on homesteaded property. Only after there has been a levy of execution on the excess value of the property over the homestead exemption does a lien attach. In *Swearingen,* the plaintiff recorded an abstract of judgment against the defendant, who had declared a homestead before the entry of judgment. The defendant and his wife were subsequently declared bankrupt and their property set aside under the Bankruptcy Act as exempt property. Because the judgment creditor had not begun any proceedings to execute on the property (Civ. Code, § 1245 et seq.) at the time bankruptcy was declared, he had obtained no judgment lien on the homesteaded property. Therefore, he had no lien on which to foreclose. The judgment was merely a personal liability of the defendant, which was undisputedly discharged in the bankruptcy proceeding. (*Id.,* at p. 587.)

While *Swearingen* does not address the question of retroactivity of exemption amount, it does show that the right to execute on a judgment does not automatically allow the judgment creditor to satisfy his judgment with the excess value of property over the homestead exemption. To give maximum protection to the homesteader, the creditor must first take the procedural steps prescribed in the Civil Code, and the court must then determine that there is excess over the homestead exemption which can be sold to satisfy the judgment. (Civ. Code, § 1250; *In re Rauer's Collection Co.* (1948) 87 Cal.App.2d 248, 254 [196 P.2d 803].)

Clashing with this protection afforded the homesteader is the right of the creditor to be protected from retroactive legislation. The leading case address-

plies to that interest. The exemption is not divided in proportion to the tortfeasor's interest in the property. (See *Schoenfeld* v. *Norberg* (1970) 11 Cal.App.3d 755, 763 [90 Cal.Rptr. 47].)

[3]Article XX, section 1.5, of the California Constitution provides: "The Legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families."

ing this problem, vis-à-vis homestead exemption amounts, is *Rauer, supra.* In that case, the homestead exemption at the time suit was brought against the defendant on an assigned claim was $5,000. By the time judgment was rendered and an abstract recorded, the exemption had been increased to $6,000. This court, reversing the trial court, held that an exemption could not be given retroactive interpretation, "as it would be an impairment of the obligation of contracts, and . . . the creditor is entitled to rely upon the exemption statutes as of the time the obligation was incurred, . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

" '[T]he application of the new exemption to executions issued on judgments based on preexisting contracts is prevented by the provisions of the Constitutions of the United States (art. I, sec. 10) and of California (art. I, sec. 16), forbidding laws impairing the obligation of contracts. . . . '

". . . . . . . . . . . . . . . . . . . . . . . . .

"As a prospective and not a retroactive interpretation must be given to the [year] amendment to section 1260, it is obvious that the exemption to which respondents are entitled is that which was in existence at the time of the creation of the debt upon which the judgment is founded, namely, $5,000." *(Id.,* at pp. 253-254.) Later cases using *Rauer* as authority for no retroactive application of homestead exemption increases are concerned with litigation in which the dispute arose over an indebtedness. *(Robertson* v. *Willis* (1978) 77 Cal.App.3d 358, 366 [143 Cal.Rptr. 523]; *Daylin Medical & Surgical Supply, Inc.* v. *Thomas* (1977) 69 Cal.App.3d Supp. 37, 42 [138 Cal.Rptr. 878].)

Since *Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520 [41 Cal.Rptr. 190], which discussed at length the principles of retroactive statutes and vested rights, such an inflexible rule as the one in *Rauer* would not seem the best method by which we reconcile the conflicting interests in this case. The *Flournoy* court looked at the scholarly consideration of constitutional versus unconstitutional retroactivity and observed that the conclusion reached by the scholars was that *"no definitive rule is possible"* in determining where a statute falls. *(Id.,* at p. 532.) The court then accepted as workable an approach based on three policy factors expressed by Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation* (1960) 73 Harv.L.Rev. 692, 697: ". . . These factors are: the nature and strength of the public interest served by the statute, the extent to which the statute modifies or abrogates the asserted preenactment right, and the nature of the right which the statute alters."

Applying these factors to the instant case, we have already noted that the state has a strong policy toward protecting a person's dwelling place, his shelter. The

frequently increased amount of exemption is the Legislature's realistic response to changing economic conditions. A property owner today who declared a homestead in 1970 is afforded little protection if he is only allowed the 1970 exemption. His property, particularly in the Bay Area, is likely to have doubled in value since his declaration. To be of any help, the exemption must keep pace.

The increase in exemption amount does not abrogate or modify the judgment creditor's *right* to levy on the debtor's homesteaded property. It may modify his remedy because the excess above the homestead exemption is reduced by the increased exemption. The creditor would not have the same amount on which to levy after the changed statute as he did before. Of course, as pointed out in *Flournoy* v. *State of California, supra,* 230 Cal.App.2d 520, 533, a remedy can be modified by statute to such an extent that it effectually removes the right.

Here, the record does not show the value of respondent's homesteaded property at the time judgment was entered for appellants. Since the four-year interval between 1976 and 1980 was one of tremendous rise in real property values, presumably the property was much more valuable when the writ was executed. We cannot say that the value of the house has appreciated in those four years in exact proportion to the increase in the homestead exemption, but appellants have not shown that such a disproportion exists so that retroactive application of the larger exemption restricts their remedy to the point of destroying their right. Appellants' argument that a creditor waits for inflation to make the cumbersome execution process worthwhile, that the money to be realized from such inflation is legally due and owing the creditor under a judgment, and that the creditor is entitled to the benefits of the debtor's increased wealth during the permitted 10-year period of execution is alien to the purpose and spirit of the homestead laws.

Finally, the nature of appellants' right to execute against respondent's homestead is not altered by retroactive application of the amended statute. The cause of this action was not a contract in which one party obligated himself to another for a bargained sum before any litigation arose and the property available to satisfy the obligation *at the time of the bargain* became unavailable by a change in statute. No obligation arose here until the respondent was judged liable for appellants' son's death and for the ensuing damages. Only then could appellants look to respondent's property for satisfaction of that judgment. No statute on which appellants were relying to satisfy their judgment has been repealed or so altered that appellants cannot now assert their basic right to seek a writ of execution. The remedy remains effective. Since the exemption was increased by an amendment the same year appellants were awarded their judgment (although the amendment did not go into effect until the following January), appellants cannot in good faith say such increases were surprising or unexpected.

The judgment is affirmed.

Scott, J., and Barry-Deal, J., concurred.