In re William W. and Mary
SHELLEY, Debtors.

William W. and Mary SHELLEY,
Appellants,

v.

John T. KENDALL, Trustee, Appellee.

BAP No. NC–94–2059–MeAsV.
Bankruptcy No. 94–4–2530.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Feb. 23, 1995.

Decided June 23, 1995.

## OPINION

VOLINN, Bankruptcy Judge:

### I.

The issue in this appeal is whether the debtors' income in the year before they filed bankruptcy fell below $20,000, thereby qualifying them for a $100,000 homestead exemption under Cal.Civ.Proc.Code ("CCP") § 704.730(a)(3)(C) (West 1995).[1] Debtors appeal the bankruptcy court ruling that their income was in excess of the statutory limit. We reverse.

### II. FACTS

William and Mary Shelley ("Debtors") had owned a retail store called Party Barn since 1977. The business had gross receipts in excess of $300,000 during the year prior to filing bankruptcy. However, during that time, the Debtors' expenses exceeded the gross income and in 1993, the Debtors' business produced a loss of over $68,000. In the first few months of 1994, until the Debtors filed a Chapter 7 petition on April 11, 1994, the business suffered further losses of $44,-500.

In their bankruptcy schedules, the Debtors initially claimed a $75,000 homestead exemption for their residence in Newark, California. On June 15, 1994, they filed an amended schedule which claimed a $100,000 exemption for the residence.

The Chapter 7 trustee in the case, John Kendall ("Trustee"), brought a motion to limit the Debtors' homestead exemption to $75,-000 contending that their gross income exceeded $20,000. The Debtors opposed the motion and the matter was heard on August 24, 1994.

Edward S. Levinson, Oakland, CA, for appellants.

Leonardo D. Drubach, San Francisco, CA, for appellee.

Before MEYERS, ASHLAND and VOLINN, Bankruptcy Judges.

---

1. CCP § 704.730 provides in relevant part:
 (a) The amount of the homestead exemption is one of the following:

 . . . . .

 (3) One hundred thousand dollars ($100,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:

 . . . . .

 (C) A person 55 years of age or older with a gross annual income of not more than fifteen thousand dollars ($15,000) or, if the judgment debtor is married, *a gross annual income,* including the gross annual income of the judgment debtor's spouse, of not more than twenty thousand dollars ($20,000) and the sale is an involuntary sale. (emph. supp.)

The Court held that the Debtors were entitled to only a $75,000 exemption for the residence.

## III. STANDARD OF REVIEW

■ The interpretation of CCP § 704.730 is a question of law subject to *de novo* review. *In re McFall*, 112 B.R. 336, 337 (9th Cir. BAP 1990).

## IV. DISCUSSION

The bankruptcy court in analyzing CCP § 704.730 stated from the bench that "gross annual income means just exactly what it says, 'gross annual income,' and that means before you take any expenses out of it, regardless of whether they come from a business or they're personal, and accordingly, finding that the gross annual income of the Debtors exceeds $20,000, before expenses are taken out, I find that they are only entitled to the $75,000 exemption." The court therefore equated "gross annual income" with gross *receipts*.

The Debtors contend that only net income from their business should be included in the calculation of the Debtors' gross annual income. Since the business lost $67,960 in 1993, the year before the petition was filed, and some $44,000 in the first quarter of 1994, prior to bankruptcy, the Debtors contend that they had no gross income.

■ In bankruptcy actions, the validity and scope of a claimed state exemption is controlled by the applicable state law. *In re Anderson*, 824 F.2d 754, 756 (9th Cir.1987); *Haaland v. Corporate Management, Inc.*, 172 B.R. 74, 76 (S.D.Cal.1989). We are bound by California rules of construction in our interpretation of California statutes. *Anderson*, 824 F.2d at 756. These rules advise courts to construe the homestead statutes liberally on behalf of the homesteader. *Id.* at 759; *Ingebretsen v. McNamer*, 137 Cal.App.3d 957, 960, 187 Cal.Rptr. 529 (1982).

■ Subsection (C) was enacted by amendment to CCP § 704.730(a)(3) in 1988. There are no cases discussing what constitutes "gross annual income" under this subsection, and little legislative history in connection with the amendment. The only rele-

vant legislative history of the 1988 amendment is found in the 1987–88 California Legislative State Assembly File Analysis of the amendment. The first "Comment" states in part: "The laws exempting a judgment debtor's dwelling from execution are founded upon the public policy that the welfare of the state is best promoted by preserving a home where a person may be sheltered and *live beyond the reach of economic misfortune.*" (emph. supp.) When there is no controlling California authority to guide us, we may examine how the California courts would rule on the question. *In re Pieri*, 86 B.R. 208, 211 (9th Cir. BAP 1988).

■ The Panel can consider, by way of analogy, how the State defines gross income for tax purposes. In examining California law relative to the imposition of taxes on business gross income, we note that the definition of gross income is not as absolute as presumed by the trial court in this case. Cal. Rev. & Tax.Code § 17071 (West 1994) states: "Gross income shall be defined by Section 61 of the Internal Revenue Code." In turn, 26 U.S.C. § 61(a) provides that "gross income means all income from whatever source derived." Because the California statute refers to federal law to define gross income, it is appropriate to look to federal as well as state authorities for an understanding of the meaning of the term "income." *Title Ins. Co. v. State Bd. of Equalization*, 4 Cal.4th 715, 723, 14 Cal.Rptr.2d 822, 842 P.2d 121 (1992). 26 U.S.C. § 61(a) states that "gross income means all income from whatever source derived, including ... (2) Gross income derived from business." "[S]ince the origin of the federal income tax, cost of goods sold has been taken into account in computing business gross income." *Lawson v. Commissioner of Internal Revenue*, 67 T.C.M. (CCH) at 3121–23, 1994 WL 273946 (1994). Treas.Reg. § 1.61–3(a), which was cited in the California Supreme Court case of *Beamer v. Franchise Tax Bd.*, 19 Cal.3d 467, 476, 138 Cal.Rptr. 199, 563 P.2d 238 (1977), provides in relevant part: "In a manufacturing, merchandising, or mining business, 'gross income' means the total sales, less the costs of goods sold, plus any income from invest-

ments and from incidental or outside operations or sources."

Thus, under state and federal tax law, costs of goods sold are deducted from revenues in determining business gross income. Applying the tax law definition of business gross income to the case at hand, the Debtors' 1993 tax return [2] shows "gross receipts" of $495,350 and "costs of goods sold" of $217,800. This resulted in "gross profit" of $277,550. "Other income" was $37,220, leading to "gross income" of $314,770. Arguably then, under the definition of "gross income" used for California tax purposes, the Debtors' gross income in 1993 would limit the Debtors to a $75,000 homestead exemption. However, having established that "gross income" under California law in an income tax context may be defined as less than gross receipts (contrary to the ruling on review here), we may consider what the proper definition of "gross income" would be under California law in an exemption context.

Income has been defined by the United States Supreme Court as "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955). Thus, in determining whether income is realized, we should consider whether there is an accession to wealth. *Title Ins. Co.,* 4 Cal.4th at 724, 14 Cal.Rptr.2d 822, 842 P.2d 121. One way to apply this definition is to hold that because revenues of the Party Barn business accrued to the Debtors' benefit, the Debtors realized an undeniable accession to wealth. Implicit in this notion is an assumption that a debtor's gross receipts are not subject to costs and operating expense. This is a questionable premise since it disregards the obligation to pay for such costs and operating expense. The concept of "undeniable accession to wealth" is consistent with the concern of the legislature in an exemption setting that the debtor have a minimal resid-

ual or net income available for use. Implicit in this concept, where income is derived from a business, is the dedication of the revenues of the business producing the gross receipts to payment of the costs and expenses which the Debtors must pay to sustain and operate the business. Simply acquiring an inventory is not enough. Costs such as rent, payroll, and other expenses are necessary to transform inventory into income. Whatever remains of these obligations, if anything, may then be subject to the debtor's personal use.

The term "gross income" should not convey the same definite and inflexible significance under all circumstances and wherever used. It is a term whose construction and meaning depends on the context of the subject matter. *In re Etheridge,* 68 B.R. 235, 237 (Bankr.C.D.Ill.1986). In *Title Ins. Co.,* 4 Cal.4th at 723, 14 Cal.Rptr.2d 822, 842 P.2d 121, the California Supreme Court stated: "[O]ur task is to determine whether title insurers realize income for purposes of California insurance tax law. In doing so, we must also consider the practical realities of the title insurance business in California." The court declared that the substance of a transaction should be looked at to determine whether the taxpayer actually realizes gain. 4 Cal.4th at 728, 14 Cal.Rptr.2d 822, 842 P.2d 121. In the instant case, we must consider the practical realities and circumstances of owning a business. A business owner does not receive the benefit of all gross revenues of his or her business. As indicated, only the profits (revenues minus costs) of the business are available to benefit the business owner.[3] This concept is incorporated in the definition of annual gross income found in Cal. Fam. Code § 4058(a) (West 1994). "The annual gross income of each parent means income from whatever source derived ... and includes ... (2) Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business."

---

**2.** The copy of the Debtors' 1993 tax return in the excerpts of record does not show the last digit of the figures for business profits or losses. We have arbitrarily set the last digit at zero. This does not affect our analysis.

**3.** We realize that calculations of cost and expense are variable, but there is no reason why there cannot be a review by the court as to such claims if the question arises. If there is a dispute, the court's findings will govern.

The foregoing reasoning should apply to the operation of a business. To hold otherwise would result in discrimination against sole proprietors. If the Party Barn had been formed as a corporation, with the Shelleys as stockholders, only the net profits of the business would have accrued to them as dividends, while the rest of the receipts would have been depleted by expenses. It does not make sense to treat an individual proprietor differently than a shareholder. In any event, the statute states "a person 55 years of age or older" without qualification.

 The California homestead exemption should be construed liberally, "so that its citizens would not lose their homes through a technicality." *In re Donaldson*, 156 B.R. 51, 53 (Bankr.N.D.Cal.1993), citing *San Diego White Truck Co. v. Swift*, 96 Cal.App.3d 88, 92, 157 Cal.Rptr. 745 (1979). The California Legislative State Assembly File Analysis, referred to above, notes "The laws exempting a *judgment debtor's* dwelling from execution are founded upon the public policy that the welfare of the state is best promoted by preserving a home where a *person* may be sheltered and live beyond the reach of economic misfortune." (emph. supp.) Neither the statute nor its history indicates that any class, particularly business owners, was to be excluded. As indicated above, the explicit standard of an income ceiling is the only criterion. Allowing sole proprietors to deduct costs of product and legitimate expenses will permit them, as with *all* debtors or persons who are members of the class, to retain the maximum homestead amount warranted by "economic misfortune," thereby accomplishing the purpose articulated by the statute's legislative history.

 The Trustee further argues that evidence that the Debtors had sizable expenses demonstrates that their gross annual income must have exceeded $20,000 in the year before bankruptcy. The Debtors' pre-petition monthly expenses were $37,282.80, of which monthly nonbusiness expenses were $4,238. The Debtors' Statement of Financial Affairs reveals that during the ninety days preceding the filing of their bankruptcy petition, the Debtors made a total of $37,837 in payments to creditors. The Trustee, as the party objecting to the claim of exemption, has the burden of proving that the exemption is improper. Fed.R. Bankr.P. 4003(c). Pointing to high expenses and large payments to creditors in the year before bankruptcy does not demonstrate nor imply net income that year. All this proves is that the debtor, despite trying to pay his bills from gross receipts, was incurring operating losses. Most debtors in bankruptcy have greater expense than income in the year before bankruptcy. That is why they file for bankruptcy protection. The trustee has produced no evidence sufficient to prove that the Debtors' gross income in the year before they filed the Chapter 7 petition was over $20,000.

Finally, with regard to apprehensions voiced in the dissent as to variable accounting principles, confusion and "abuse," we note that similar concerns were argued by the trustee in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), relating to fraudulent or questionable exemption claims. The court alluded to the trustee's concern that allowing an exemption to subsist on its own terms simply by the passage of thirty days without objection would create improper false or questionable claims of non-exempt property. In response the Court stated:

> Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. See, *e.g.*, [citing various statutory and rule provisions relating to civil and criminal sanctions enacted to deter fraudulent or questionable conduct by bankruptcy debtors]. These provisions may limit bad-faith claims of exemptions by debtors. To the extent that they do not, Congress may enact comparable provisions to address the difficulties that Taylor predicts will follow our decision. We have no authority to limit the application of § 522(1) to exemptions claimed in good faith.

503 U.S. at 644–45, 112 S.Ct. at 1648–49.

We likewise believe that the California Legislature may be called on to address the concerns indicated should experience demonstrate that corrective action is required.

## V. CONCLUSION

When determining a debtor's gross annual income for the purposes of CCP § 704.730, income arising from the operation of a sole business proprietorship is derived by deducting from the gross receipts of the business the cost of inventory and operating expense. On the facts presented, the debtors are entitled to the higher exemption of $100,000 provided by CCP § 704.730. We reverse the order on appeal.

MEYERS, Bankruptcy Judge, dissenting:

I respectfully **DISSENT**.

The bankruptcy court found that "gross annual income" means just that. I agree. Plainly read, the term "gross annual income" encompasses all income received by the person or married couple in question over the course of a year. The plain language of the statute must be the court's determinant. *Patterson v. Shumate*, 504 U.S. 753, 757, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992). The Ninth Circuit Court of Appeals has held that in interpreting California statutes, a federal court may not omit or add to the plain meaning of the statute. *In re Borba*, 736 F.2d 1317, 1320 (9th Cir.1984).

California statutes are to be interpreted according to their plain meaning:

In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.

Cal.Civ.Proc.Code § 1858. The statute in this case says "gross annual income." Unless the statute defines the words in question, they "will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). An appropriate place to look for the common meaning is in the dictionary. *See Turner v. Prod*, 707 F.2d 1109, 1114 (9th Cir.1983), *rev'd on other grounds sub nom. Heckler v.*

*Turner*, 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985).

The Webster's II New Riverside University Dictionary (1988) defines, in relevant part, "gross" as "[e]xclusive of deductions" and "income" as "[m]oney or its equivalent received during a period of time in exchange for labor or services, from the sale of goods or property, or as profit from financial investments." Using these common definitions I must interpret "gross annual income" in Cal.Civ.Proc.Code § 704.730(a)(3)(C) to mean all income received by the Debtors for the year, or parts thereof, in question.

The majority, apparently having determined that "gross annual income" was ambiguous, looked to the definitions of "gross income" and "annual gross income" in other statutes: the California Tax and Family Codes. These Codes differ. Under the Tax Code only the costs of goods sold are subtracted from gross receipts, while under the Family Code all business expenses are subtracted to determine "annual gross income." Under the Tax Code the Debtors' "gross income" exceeds $20,000. Under the Family Code it does not. The majority decided to employ the latter definition, noting that the exemption statutes are to be construed liberally. I would not rely on these other statutes.

In each of the statutes discussed by the majority the legislature provided direction for interpretation thereof, either directly by definition (Cal.Fam.Code § 4058(a)(2)) or indirectly by referring to federal statutes (Cal. Rev. & Tax.Code § 17071 providing that 26 U.S.C. § 61(a) applies to define gross income). The legislature is thus capable and willing to provide direction if it intends a result which may require a reading which is not apparent on the face of the statute. The fact that no direction was given in the exemption statute further supports the conclusion that the legislature intended a plain reading of the language.

As a practical matter, allowing business deductions and expenses to impact "gross annual income" introduces troublesome issues and opens the door for abuses which would be difficult for courts to monitor. For instance, the courts must decide whether deductions are to be made on a cash or accrual basis. Would a debtor be allowed to deduct

362

an expense incurred prepetition which remained unpaid as of the filing? Common sense would suggest that a cash basis be used, but what of the retailer who has sold inventory but has not, as of the petition date, paid his or her wholesaler? Furthermore, sole proprietorships, such as Party Barn, could regulate the net "gross income" to the owners by giving inordinate bonuses and salaries to favored employees or attributing inappropriate expenses to the business.

Another consideration is whether the interpretation of the majority is in line with the goal of the legislation. Section 704.730(a)(3)(C) has two limitations. First, the debtor must be over 55 years of age. Second, the debtors must have a combined annual income of not more than $20,000. This is a very exclusionary statute. The group defined by these limitations undoubtedly consists primarily of senior citizens with modest incomes such as those receiving Social Security. The California legislature likely will be surprised to find this statute being applied to increase the homestead exemption of an entrepreneurial couple through whose hands passed $532,670 over the course of the tax year preceding the bankruptcy.

A plain reading of the statute is mandated and would avoid these unnecessary and complex issues. I would uphold the decision of the bankruptcy court and read "gross income" to mean all income received.