**In re Donald Allen BUSH, Debtor.**

No. 05–15215–H7.

United States Bankruptcy Court, S.D. California.

July 19, 2006.

Gary B. Rudolph, Esq., Dennis G. Bezanson, Esq., Sparber Rudolph Annen, APLC, San Diego, CA, for trustee.

Michael G. Doan, Esq., Doan, Levinson & Liljegren, LLP, Carlsbad, CA, for Debtor.

MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

Debtor claimed $150,000 homestead exemption under California Civil Code Procedure ("CCP") 704.730(a)(3)(C). Richard M. Kipperman, Chapter 7 trustee ("trustee"), objected on the ground that debtor's gross annual income exceeded the $15,000 statutory threshold. At issue is the meaning of gross annual income under CCP 704.730(a)(3)(C).

This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334

and 157(b)(1) and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## I.

### *FACTS*

Debtor filed his voluntary Chapter 7 petition on October 16, 2005, and claimed $150,000 homestead exemption. Debtor is a sole proprietor doing business as Bush Financial Services and is also a sales representative, independent contractor, for Linsco Private Ledger. Debtor's 2005 tax return showed business income in the amount of $3861 and adjusted gross income in the amount of $3588.

## II.

### *DISCUSSION*

California Civil Code Procedure § 704.730 provides in relevant part:

(a) The amount of the homestead exemption is one of the following:

. . . .

(3) One hundred fifty thousand dollars ($150,000) if the judgment debtor . . . who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:

. . . .

(C) A person 55 years of age or older with a gross annual income of not more than fifteen thousand dollars ($15,000) . . . and the sale is an involuntary sale.

Thus, there are three requirements that debtor must meet to be eligible for the $150,000 homestead exemption: 1) he must be 55 years of age or older; 2) have gross annual income of not more than $15,000; and 3) the sale must be an involuntary sale.[1]

In interpreting the term "gross annual income," in the exemption statute, the trustee urges this Court to adopt the reasoning and rationale set forth in *In re Sweitzer*, 332 B.R. 614 (Bankr.C.D.Cal. 2005). On the other hand, debtor argues that *Kendall v. Shelley (In re Shelley)*, 109 F.3d 639 (9th Cir.1997) sets forth the rule of law this Court is bound to follow.

### *THE SHELLEY CASE*

The debtors in *Shelley* owned a retail store which had gross receipts in excess of $300,000 during the year prior to bankruptcy filing. However, during that time, the debtors' expenses exceeded the gross income and the debtors' business produced a loss of over $68,000. The debtors' business incurred further losses up until the time of their bankruptcy filing. *Shelley v. Kendall (In re Shelley)*, 184 B.R. 356 (9th Cir. BAP 1995). Debtors claimed the higher exemption for their homestead under CCP 704.730(a)(3)(C) and the trustee opposed contending that their gross income exceeded the statutory threshold for married couples. The bankruptcy court equated gross annual income with gross receipts and found the debtors were entitled to only a $75,000 exemption.

On appeal, the Bankruptcy Appellate Panel (the "BAP") reversed. The BAP

---

1. It is undisputed that debtor met the age requirement, however, the trustee argued that the sale was voluntary since debtor had entered into a contract for sale of the real property prior to his bankruptcy filing pursuant to a family law decree. Debtor sought this Court's approval for the sale of the real property postpetition. At the hearing on this matter, the Court found the trustee's argument without merit since the filing of a bankruptcy petition is the functional equivalent of a forced or involuntary sale under California law. *Katz v. Pike (In re Pike)*, 243 B.R. 66, 70 (9th Cir. BAP 1999).

examined statutes under the California Tax and Family Codes to ascertain the meaning of gross annual income under the exemption statute. Under the Tax Code, only the costs of goods sold are subtracted from gross receipts. *Id.* at 359. The BAP noted that under the Tax Code, the debtors' gross annual income would be more than the threshold under the exemption statute. *Id.*

The BAP next examined the California Family Code (the "Family Code") which defined annual gross income to mean "income from whatever source derived" including "income from the proprietorship of a business, such as gross receipts reduced by expenditures required for the operation of the business." Cal. Fam.Code § 4058(a)(2). The BAP also considered the "practical realities and circumstances of owning a business," and found that "only the profits (revenues minus costs) of the business are available to benefit the business owner." *Id.* The BAP noted that this last concept was incorporated into the definition of annual gross income found in Family Code § 4058(a)(2). *Id.*

The BAP reasoned that since the homestead exemption should be construed liberally, sole business proprietors should be able to deduct the costs of product *and* legitimate expenses from gross receipts of the business "to retain the maximum homestead amount . . . ." *Id.* at 360 (emphasis added). The BAP was affirmed by the Ninth Circuit. *Shelley,* 109 F.3d 639 (9th Cir.1997).

Thus, *Shelley* stands for the proposition that the term "gross annual income" as used in CCP 704.730(a)(3)(C) should be given the more flexible definition as that set forth in the Family Code (versus the definition set forth in the Tax Code) so as to allow sole proprietors to reduce gross receipts by costs of product and other legitimate expenses required for the operation of their business.

### THE SWEITZER CASE

In *Sweitzer,* the debtor was a college professor/consultant whose wages exceeded the statutory threshold under CCP 703.703(a)(3)(C). *Sweitzer,* 332 B.R. at 614. The debtor, however, sought to offset against his income, his share of losses of an "S" corporation. *Id.* at 615.

The *Sweitzer* court engaged in a similar analysis as the BAP in *Shelley* by examining both the tax laws and the Family Code. The court analyzed case law that interpreted gross income for tax purposes for those engaged in a service business. 332 B.R. at 617. The court noted that the definition of gross income under the tax law was different for those engaged in a service business versus a mining, manufacturing and merchandising business. *Id.* Thus, while agreeing with the holding in *Shelley* as it applied to a retail business, the court determined that if the primary source of a debtor's income was from services, deductions from gross receipts should not be allowed. *Id.*

The *Sweitzer* court found support for its interpretation of "gross annual income," with respect to a debtor whose income was derived from performing services, from Family Code § 4058. The court noted that Family Code § 4058 makes a distinction "between income based on commissions, salaries and royalties under subsection (a)(1) from 'income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business' . . . under subsection (a)(2)." *Id.* at 618. The court evidently was convinced that the debtor fell within the scope of subsection (a)(1) because there was little evidence presented other than W–2 forms which showed

debtor's income was primarily from services he rendered as a college professor or consultant. Moreover, no deductions related to the debtor's income were at issue. Rather, it was the offsetting of an investment loss against income that the *Sweitzer* court found troublesome. The court thought it "improper to allow a debtor, whose income from wages and consulting services alone exceeds the $20,000 threshold, to come back below the threshold by offsetting investment losses." *Id.* The court determined that the debtor was not entitled to the higher exemption under CCP 704.730(a)(3)(C).

## ANALYSIS

█ It is undisputed that debtor is a sole proprietor who offers financial services. The trustee argues that *Sweitzer* applies because the debtor's primary source of income is from rendering services and, therefore, it would be inappropriate to allow reductions from gross income.[2] The Court disagrees. *Sweitzer* does not stand for a *per se* rule that a debtor, whose income is derived primarily by rendering services, is not entitled to any reductions from gross receipts. Rather, the Court must first examine the context in which the debtor's income is derived, and then determine what reductions, if any, are appropriate given the *Shelley* court's directives. No offsets, such as the investment loss in *Sweitzer*, are at issue in this case.

The *Shelley* court rejected the more limiting definition of gross income under the Tax Code and adopted the more flexible

definition under Family Code § 4058(a)(2). That means when there is an operating business, such as Bush Financial Services, and there are legitimate business expenses, the debtor's gross receipts are reduced by those expenditures required for the operation of the business to arrive at "gross annual income" for purposes of the exemption statute. There is no specific requirement that a debtor be engaged in a more "capital intensive enterprise such as retail sales." *Sweitzer,* 332 B.R. at 618.

The debtor's Schedule C on his 2005 tax return shows gross receipts of $31,879 and expenses of $28,018. Debtor's return shows his business income was $3,861 and his adjusted gross income was $3,588. Debtor declared that his earnings for 2005, the appropriate year for calculating his gross annual income, arose solely from the operation of his business which is a sole proprietorship. He also declared that he had no carry forward losses or ownership interests in any "S" corporations and had no further losses to offset his business income. The debtor also attached various receipts evidencing his expenses "required for the operation" of his business. The trustee has not refuted any of this evidence.

This Court has ample evidence that the debtor's primary source of income was from his sole proprietorship and, even though that income was from the performance of services, the debtor is entitled to reduce from gross receipts those "expenditures required for the operation of the business" per the holding in *Shelley.*

2. The trustee also argued that the debtor's gross annual income was in excess of the $15,000 threshold since the family court had imputed income to the debtor of $70,000 per year. The trustee contends that a loan in the amount of $10,000 from debtor's parents, cash advances from credit cards, or cash from refinancing the residence should also be in-

cluded in the broad definition of gross income. The trustee did not cite any authority for his arguments that these items should be included for purposes of calculating the debtor's gross annual income under the exemption statute. The Court declines to include such amounts in debtor's income.

Debtor's gross annual income therefore falls below the statutory threshold of $15,000 and he is entitled to the $150,000 exemption.

### III.

*CONCLUSION*

The Court finds that debtor's gross annual income is below the $15,000 statutory threshold and he is entitled to the $150,000 homestead exemption.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The debtor is directed to file with this Court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.